IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MONSTER ENERGY COMPANY, | |
| Plaintiff, | Case No. 15-cv-4166 |
| v. | Judge Joan H. LefKow |
| CHEN WENSHENG, *et al.*, | Mag. Judge Daniel G. Martin |
| Defendants. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
AND TO RELEASE FROZEN FUNDS**

Defendant Zhang Yuan, identified as owner of alliexpress store # 205139 (No. 180 in Dkt. No. 21-2) submits this memorandum of law in support of his motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and to release frozen PayPal funds.

**I.   INTRODUCTION**

Defendant Zhang Yuan is a citizen of China who has never been to the United States. Declaration of Zhang Yuan, at ¶¶ 2-3 (hereinafter Yuan Decl. at ¶ __). He does not maintain a business presence in Illinois, has not formed contracts in Illinois, and has never shipped any allegedly-infringing products here. *Id.* at ¶ 3. Under well-established principles, he is not subject to personal jurisdiction in this Court. Any other outcome is blatantly unfair.

Moreover, as a result of alleging offering to sell $67.94 in stickers bearing Plaintiff's trademark, Mr. Yuan has had $11,744 in PayPal funds frozen by Plaintiff. This money is needed to pay for counsel and to support his family. *Id.* at ¶¶ 6-7.

## II. PLAINTIFF'S ALLEGATIONS FAIL TO SUPPORT A FINDING OF PERSONAL JURISDICTION OVER THE DEFENDANT

First, it is undisputed that Mr. Yuan does not have continuous and systematic general business contacts in Illinois to support a finding of general jurisdiction. S*ee* Yuan Decl. ¶ 3. Moreover, Plaintiff's failure to aver any facts in support of general jurisdiction constitutes a waiver permitting this Court to focus on the specific-jurisdiction inquiry. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997).

For specific jurisdiction in a Lanham Act case such as the instant action, the Seventh Circuit reaffirmed that a Court may exercise specific personal jurisdiction over a foreign defendant only when the defendant has sufficient "minimum contacts" with the forum state and (2) the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Advanced Tactical*, 751 F.3d 796 at 800-801.

"[R]elevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Id*. It is the "defendant's suit-related conduct [that] must create a substantial connection with the forum State." *Id*. The only contacts that matter are those that a defendant creates with the forum. *Id*. "Mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 134 S. Ct. at 1125.

Here, to support a claim of jurisdiction over Mr. Yuan, Plaintiff will apparently point to the fact that (1) Mr. Yuan had pictures on his website featuring an alleged infringing product and (2) Mr. Yuan allegedly offered to sell a single item to a fictitious buyer allegedly located in Illinois. S*ee* Yuan Decl. ¶ 5. These acts fall far short of the "minimum contacts" needed to hale Mr. Yuan into Illinois.

First, jurisdiction cannot be established based on Mr. Yuan having featured an infringing product on his interactive website:

2

> The operation of an interactive website does not show that the defendant has formed a contact with the forum state. Having an interactive website (which hardly rules out anything in 2014) should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible. To hold otherwise would offend traditional notions of fair play and substantial justice.

*Advanced Tactical*, 751 F.3d at 803 (citations omitted). Moreover, that the website may even have generated infringing sales abroad does not create the necessary minimum contacts since the Lanham Act has no extraterritorial reach. *Alcar Group, Inc. v. Corporate Performance Sys.*, 109 F. Supp. 2d 948, 949 (N.D. Ill. 2000).

Thus, the inquiry boils down to whether Mr. Yuan purposefully exploited the Illinois market beyond simply operating an interactive website. As to this point, the only evidence Plaintiff has is an exchange between Mr. Yuan and a person identified as Tyronn Chen. As Mr. Yuan states, Tyronn Chen first approached him about products:

| | |
|---|---|
| zhang yuan<br>23:31 Jan 30,2015 | paypal: 1060727104@qq.com |
| 23:29 Jan 30,2015 | shipping to USA?<br>shipping and item 20 set $1150 |
| 23:09 Jan 30,2015 | hi friend<br>yes I have inventory.<br>yes You can PAYPAL payment.<br>thank you |
| Me<br>22:12 Jan 30,2015 | I would like to buy20 of this item if you have stock. Need to pay with paypal account. Please message back if we can do business.<br><br>About this product:<br>KLX110 3M MONSTER graphic sticker decals + green plastic for KAWASAKI MOTORCYCLE    Reply about this product |

*See* Yuan Decl, ¶ 5.

3

No sale was made. Yuan Decl, ¶ 7. Moreover, there is no evidence that Tyronn Chen is even located in Illinois. Plaintiff has submitted no supporting evidence. Thus, there is no evidence establishing any connection with Illinois.

Plaintiff resides outside of Illinois in California and Tyronn Chen, if a real person, resides in some unknown location. These random, attenuated and Plaintiff driven contacts are insufficient to establish jurisdiction. *See Walden v. Fiore*, 134 S. Ct. 1115, 1123 (U.S. 2014)("These same principles apply when intentional torts are involved. In that context, it is likewise insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff. A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum.)(citations omitted).

Even if Plaintiff establishes the mysterious Tyronn Chen resides in Illinois, the alleged offer is invalid since it was induced by fraud. Under well-established Illinois law, fraud vitiates all contracts. *See Ainsworth Corp. v. Cenco, Inc.*, 107 Ill. App. 3d 435, 439 (Ill. App. Ct. 1st Dist. 1982). Thus, Plaintiff cannot point to a single valid offer to sell an infringing product into Illinois. To permit a Plaintiff to establish jurisdiction by manufacturing a single sham offer does not comport with due process; it "offends traditional notion of fair play and substantial justice."

> Not only did Advanced Tactical fail to link the few sales to Real Action's litigation-specific activity, but even if it did, it is unlikely that those few sales alone, without some evidence linking them to the allegedly tortious activity, would make jurisdiction proper. *See Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). To hold otherwise would mean that a plaintiff could bring suit in literally any state where the defendant shipped at least one item. The creation of such de facto universal jurisdiction runs counter to the approach the Court has followed since International Shoe, and that it reaffirmed as recently as February 2014 in *Walden*.

*Advanced Tactical*, 751 F.3d at 801-802.

4

Lastly, even if Plaintiff can somehow demonstrate that Tyronn Chen resides in Illinois, and the transaction is a valid offer for a sale directed to Illinois, as set forth in *Advanced Tactical*, simply selling a single infringing product into a forum is not enough to comport with due process:

> Here, the district court found the necessary minimum contacts based on several facts: first, **Real Action fulfilled several orders of the allegedly infringing projectiles for purchasers in Indiana; second**, it knew that Advanced Tactical was an Indiana company and could foresee that the misleading emails and sales would harm Advanced Tactical in Indiana; third, it sent at least two misleading email blasts to a list that included Indiana residents; fourth, it had an interactive website available to residents of Indiana; and finally, it put customers on its email list when they made a purchase, thereby giving the company some economic advantage. **In our view, none of these meets the standards that the Supreme Court has set.**

*Advanced Tactical*, 751 F.3d at 801 (emphasis added).

In short, Mr. Yuan did nothing to target the forum. Any contact with Illinois, if present at all, was a de minimis single offer for sale manufactured by Plaintiff. It was not of Mr. Yuan's creation. As a result, Mr. Yuan should not be subject to personal jurisdiction in Illinois since his conduct falls far short of the activity found by *Advanced Tactical* to be insufficient.

Finally, even if this Court finds a bare minimum of contacts with Illinois, jurisdiction over Mr. Yuan is only proper if exercising jurisdiction "does not offend traditional notions of fair play and substantial justice." *Hemi*, 622 F.3d at 759 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In making this determination, the Court should consider: (1) the burden on the defendant, (2) the forum State's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and (4) the shared interest of the several States in furthering fundamental substantive social policies. *Id.*

Here, as shown above, the parties do not reside in Illinois. Nor are any witnesses located in Illinois. Nor has Plaintiff identified a single, actual Illinois resident that has been harmed by

the alleged tortious acts. The only connection the matter has with Illinois is that Plaintiff's counsel is located in Illinois. This further supports dismissing the action:

> After weighing the above factors, the court concludes that it would not be fair to exercise jurisdiction over Stone Soap. Neither party has a substantial interest in adjudicating the case in Illinois. Neither plaintiff nor defendant is an Illinois resident. Hot Wax is a Wisconsin corporation. Stone Soap is a Michigan corporation. Hot Wax is the injured party in this case and Illinois does not have a substantial interest in protecting the rights of companies located outside its borders.
>
> Furthermore, the court fails to see any added convenience that would result from litigating Hot Wax's claim in this forum. The plaintiff, defendant, most, if not all witnesses, and documentary evidence are located outside Illinois. Finally, the court can think of no judicial interest that would be served by the resolution of this deceptive advertising case in Illinois--a state where the injury did not occur or where the defendant does not transact business. Thus, the interests of Illinois, the convenience of the parties, and judicial efficiency weigh against a decision to assert jurisdiction over Stone Soap. To exercise personal jurisdiction over the defendant in this case would be substantially unjust. Accordingly, this court lacks personal jurisdiction over Stone Soap under the principles of federal due process.

*Hot Wax, Inc. v. Stone Soap Co. Inc.*, 1999 U.S. Dist. LEXIS 4091, *21-22 (N.D. Ill. Mar. 25, 1999).

## II.  BECAUSE THE COURT LACKS JURISDICTION, THE COURT SHOULD DISSOLVE THE INJUNCTION AND UNFREEZE THE PAYPAL ACCOUNT

It is axiomatic that a federal court may issue an injunction only if it jurisdiction over the claims and the parties. *See, e.g.*, *Advanced Tactical*, 751 F.3d at 800 ("In order for the district court's preliminary injunction to be valid, that court had to have personal jurisdiction over the defendant") (citing *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 598 (7th Cir. 2007) ("Default judgments rendered without personal jurisdiction are void and, therefore, we shall 'set aside a default judgment as a *per se* abuse of discretion if the district court that entered the judgment lacked jurisdiction.'")); *Land-O-Nod Co. v. Bassett Furniture Indus.*, 708 F.2d 1338, 1340 (8th Cir. 1983) (confirming that the court must first have jurisdiction before it may exercise its discretion to issue an injunction); 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure §

2941 (1990) ("[T]he Court must have personal jurisdiction over the Party against whom equitable relief is sought"). As shown above, in this case the jurisdictional question should be answered in the negative. However, even if the Court determines that it has personal jurisdiction, it should dissolve the injunction because the Plaintiff cannot show likelihood of success on the merits or irreparable harm.

> Injunctive relief . . . is warranted if the movant can make a threshold showing: (1) that the movant has some likelihood of success on the merits of the underlying litigation; (2) irreparable harm to the plaintiff; and (3) no adequate remedy at law exists. If these three conditions are met, then the Court must balance the harm to the movant if the injunction is not issued against the harm to the defendant if it is issued improvidently and consider the interest of the public in whether the injunction is to be granted or denied.

*IlYesions Too Reality v. City of Harvey*, No. 02 C 7272, 2003 U.S. Dist. LEXIS 1530, at *12 (N.D. Ill. Jan. 31, 2003) (citing *Duct-O-Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509 (7th Cir. 1994); *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314-15 (7th Cir. 1994); *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992)). Under Fed. R. Civ. P. 65(b), an *ex parte* TRO may only be entered when "specific facts in an affidavit or a verified complaint clearly show that *immediate and irreparable injury*, loss, or damage will result to the movant before the adverse party can be heard in opposition[.]" (emphasis added). Given that not a single shipment was ever sent to the United States (or will be sent in the immediate future), Plaintiff could not have met that exacting standard when the TRO was first entered in this case. Moreover, even if a decision on jurisdiction were to be deferred, that Mr. Yuan's defense is so strong belies any likelihood of success. This Court should dissolve the injunction as against Mr. Yuan.

  **A.**  **In The Alternative, Plaintiff Should Be Required To Post A Bond Sufficient To Protect Mr. Yuan And The Other Defendants From An Injunction That Was Improvidently Entered**

A $10,000 bond was posted. That amount is insufficient to protect Mr. Yuan and the other dragnet victims from the injunction upon a determination that it was improvidently entered, which is likely, given the significant jurisdictional issue discussed above.

The injunction seized PayPal funds that are the property of Mr. Yuan in an amount in of $11,744 an amount for this single defendant that exceeds the bond paid. He is one of hundreds of defendants whose businesses ground to a halt the moment their payment accounts were frozen. $10,000 is insufficient to compensate Mr. Yuan and the other defendants should it be determined that the injunction was improvidently granted, and should therefore be increased accordingly at an amount of at least $5,000 per defendant.

### 1. Security in an Amount Sufficient to Pay Defendant Damages is Mandated by Fed. R. Civ. P. 65

"It is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all—including the public—whose interests the injunction may affect." *Inland Steel Co. v. United States*, 306 U.S. 153, 157 (1939). "The issuance of an injunction will in many cases cause financial losses to interested parties . . . ." *Middlewest Motor Frgt. Bur. v. United States*, 433 F.2d 212, 225 (8th Cir. 1970). "It is the duty of the court issuing the injunction to take necessary measures to protect the interests of parties before it, as well as the public interest." *Id.*

Fed. R. Civ. P. 65(c) gives this Court the power to protect parties subject to an injunction by requiring the plaintiff post a bond for the defendant's protection. The rule provides for the issuance of a preliminary injunction or TRO "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Rule 65.1, the companion to Rule 65(c), creates a cause of action for costs and damages incurred by an enjoined party by reason of a wrongful injunction enforceable on motion without an independent action. *Monroe Div., Litton Bus. Sys., Inc. v. De Bari*,

8

562 F.2d 30, 32 (10th Cir. 1977). Rule 65.1 exists because "absent an injunction bond, the court has no power to award damages if it is later determined that an injunction had been improvidently entered." *Universal Athletic Sales Co. v. Am. Gym*, 480 F. Supp. 408, 424 (W.D. Pa. 1979) (citing *Russell v. Farley*, 105 U.S. 433 (1881)).

The fact that Plaintiff is a company of substantial means is irrelevant and does not obviate the need for a bond sufficient to protect this defendant, and others, against damage caused by an injunction entered improperly. Without the posting of adequate security the defendants may not recover damages or restitution from Plaintiff beyond the posted bond amount without filing a separate action for malicious prosecution. The protection afforded parties restrained by an injunction is lost when the court dispenses with a bond, or provides for an insufficient bond, and instead "relies on the financial strength of the party seeking the injunction in place of the security of a bond." *Monroe Div.,* 562 F.2d at 32.

Here, the Court required Plaintiff to post $10,000 bond against the seizure of possibly millions. The record does not reveal how much more was seized from the other defendants who are the subject of the injunction. We also do not know how many more defendants may seek relief. Clearly, $10,000 is not enough protection. Plaintiff should be required to post enough bond to cover all seized funds, and should reveal how much that is.

    **2.**    **Funds Unrelated to the Alleged Infringement Were Improperly Seized and Mr. Yuan Needs His Seized Funds to Retain Counsel and to Support His Family**

The injunction restrains all of the funds in Mr. Yuan's PayPal account, rather than limiting the seizure to amounts that could be traced to alleged infringement. Only those funds derived from the alleged infringement may be properly seized, and any amounts in excess of the amounts related to the alleged infringement should be released to avoid violating Mr. Yuan's due process rights. Mr. Yuan denies selling any branded products to United States buyers. Yuan

9

Decl. at ¶ 5. And plaintff has no evidence of a single sale. As such, all funds in the account are beyond the scope of the Lanham Act and Plaintff's claims, and should be released. Further, Mr. Yuan needs the funds seized in him PayPal account in order to retain counsel to defend him in this case and to support his family. Yuan Decl. at ¶ 7. Even if this Court determines that it has jurisdiction over the claims and Mr. Yuan personally, this Court should modify the injunction to limit the seizure to only $67.94 for the stickers alleged to have been offered for sale, which is all that can be attributed to his alleged infringement. Permitting the seizure of $11,744 of Mr. Yuan's PayPal funds for a $67.94 offer to buy stickers created by an unidentified buyer is an injustice.

## III. CONCLUSION

For the foregoing reasons, Defendant Yuan respectfully requests that this Court dismiss the complaint for lack of personal jurisdiction over him, and dissolve the injunction as to his frozen PayPal account. In the alternative, Defendant Yuan respectfully requests that this Court require Plaintiff to post a bond sufficient to protect him and the other defendants from an injunction that was improvidently entered.

Dated: June 23, 2015

Respectfully submitted,

/s/ Keith A. Vogt

Keith A. Vogt
1033 South Blvd
Suite 200
Oak Park, IL 60302
Keith@Vogtip.com
708.203.4787
*Attorney for Defendant*

10

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that service of the foregoing document was made on all counsel of record on June 24, 2015 *via* the court's CM/ECF system.

/s/ Keith A. Vogt
Keith A. Vogt

11