IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **MONSTER ENERGY COMPANY**, | ) | |
| Plaintiff, | ) | Case No. 15-cv-4166 |
| | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| **CHEN WENSHENG and 498 others**, | ) | Magistrate Judge Daniel G. Martin |
| Defendants. | ) | |
| | ) | |

**ANSWER OF THREE DEFENDANTS TO THE AMENDED COMPLAINT**

Defendants Best Car Wrap, Ltd., Digi-Tech, Inc., and Cycles Club 1, defendants, respectfully and in good time respond to the Amended Complaint as follows:

AMENDED COMPLAINT PARAGRAPH 1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq. 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

RESPONSE TO PARAGRAPH 1: These defendants do not contest jurisdiction in this Court over the asserted claims, but deny that more than minimum statutory damages, set off by these Defendants' costs of suit, may be due from each of them in the circumstances.

AMENDED COMPLAINT PARAGRAPH 2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are

reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of MEC's trademarks.  Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of MEC's federally trademarks to residents of Illinois.  Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused MEC substantial injury in the State of Illinois.

RESPONSE TO PARAGRAPH 2:  These defendants do not contest venue in this Court, but deny that more than minimum statutory damages may be due from each of them in the circumstances.  These defendants deny "targeting" USA or Illinois residents and deny selling and shipping any accused product to the US or Illinois; they merely have offered to buy and resell items commonly available and heretofore unchallenged on the open market in China and elsewhere.

AMENDED COMPLAINT PARAGRAPH 3.  This action has been filed by MEC to combat online counterfeiters who trade upon MEC's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products featuring MEC's registered trademarks (collectively, the "Counterfeit Monster Energy Products"). The Defendants create the Defendant Internet Stores by the hundreds or even thousands and design them to appear to be selling genuine MEC products, while actually selling Counterfeit Monster Energy Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. MEC is forced to file this action to combat Defendants' counterfeiting of MEC's registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Monster Energy Products over the Internet. MEC has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

RESPONSE TO PARAGRAPH 3:  Denied that MEC has reserved any right to collect damages from offerers and sellers of MONSTER-branded product from China due to its lack of

enforcement activity in the USA and abroad in the eleven years since its first US trademark registration was granted to it in about 2004, despite widespread infringement as shown by its naming now 500 alleged infringers. Plaintiff and the public may have rights going forward to reduce or avoid confusion with its products and marks, but not as to past, heretofore unchallenged actions.

>AMENDED COMPLAINT PARAGRAPH 4. Plaintiff MEC is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

>RESPONSE TO PARAGAPH 4:     Admitted.

>AMENDED COMPLAINTI PARAGRAPH 5. MEC is a nationwide leader in the business of developing, marketing, selling, and distributing beverages, including energy drinks. In 2002, long before Defendants' acts described herein, MEC launched its MONSTER ENERGY® brand of drinks bearing its now famous mark ("Claw Icon Mark") and MONSTER ENERGY mark. A true and correct representation of MEC's original MONSTER ENERGY® drink is shown below:

>[image omitted]

>RESPONSE TO PARAGAPH 5:  Admitted as to long sales, but denied that the marks are

"famous" throughout the world and particularly in China, where Defendants reside.

>AMENDED COMPLAINT PARAGRAPH 6. MEC's successful line of MONSTER™ drinks has now grown to include numerous other well-known products, including, but not limited to, original Monster Energy® and Lo-Carb Monster Energy®; MonsterTM Assault®; Juice MonsterTM Khaos®; Juice MonsterTM RipperTM, Ubermonster®; Monster Energy® Import and Monster Energy® Import Light; Punch Monster®; Monster Energy® Absolutely Zero; Monster Energy® Zero Ultra; Monster Energy® Ultra Blue; Monster Energy® Ultra Red; Monster Cuba-Lima®; Monster Rehab®, which is a line of non-carbonated energy drinks, which includes Monster Energy Company's Monster Rehab® Rojo Tea + Energy, Monster Rehab® Green Tea + Energy, Monster Rehab® Tea + Orangeade + Energy, Monster Rehab® Tea + Pink Lemonade + Energy, and Monster Rehab® Tea + Lemonade + Energy products; Java Monster®, which is a line of dairy based coffee plus energy drinks; Muscle Monster®, which is a line of energy shakes; Monster Energy Extra Strength Nitrous Technology®, which is a line of energy drinks with a blend of nitrous oxide and carbon dioxide to create a smoother ener-

gy drink; and [image omitted] Monster Energy® which is a five ounce super concentrated energy drink, among others (referred to collectively as "MONSTER™ line of energy drinks").

RESPONSE TO PARAGAPH 6:  These Defendants are without knowledge as to the allegations of this paragraph and so deny same.

AMENDED COMPLAINT PARAGRAPH 7. Shown below are true and accurate representative pictures illustrating some of MEC's MONSTER™ line of drinks.

[images omitted]

RESPONSE TO PARAGRAPH 7:  Admitted.

AMENDED COMPLAINT PARAGRAPH 8. In addition to its MONSTER™ line of energy drinks, long before Defendants' acts described herein MEC has used, and continues to use, its Claw Icon Mark, MONSTER™ mark, and MONSTER ENERGY® mark in connection with a large variety of other products, including, but not limited to, stickers, clothing items, helmets, headgear, sports gear, and sports bags that bear Claw Icon Mark, MONSTER™ mark, and/or MONSTER ENERGY® mark (collectively, the "Monster Energy Products"). Examples of authorized helmets, apparel and accessories bearing MEC's Claw Icon Mark, MONSTER™ mark, and/or MONSTER ENERGY® mark are shown below.

[images omitted]

RESPONSE TO PARAGAPH 8:  Admitted, but denied that MEC sells any of such items itself and denied that MEC has registered trademarks for many of such items.  Denied that MEC has US trademark registrations for use of its logo or marks on vehicle wrap, gloves, and/or motorcycle helmets.

AMENDED COMPLAINT PARAGRAPH 9.     Since the initial launch of its original MONSTER ENERGY® drink in 2002, MEC's Claw Icon Mark, MONSTER™ mark, and MONSTER ENERGY® mark are and have been the subject of substantial and continuous marketing and promotion by MEC in connection with its MONSTER™ line of drinks and MONSTERTM apparel and accessories. MEC has and continues to widely market and promote its Claw Icon Mark, MONSTER™ mark, and MONSTER ENERGY® mark in the industry and to consumers. MEC's promotional efforts include — by way of example but not limitation — substantial print media, the Monster Energy website and social media sites, point of sale materials, sponsorship of athletes and athletic teams, sponsorship of athletic

competitions, sponsorship of musicians, sponsorship of live and televised events, sweepstakes, music concerts, attendance at trade shows, product sampling, and apparel and merchandise.

RESPONSE TO PARAGRAPH 9: These Defendants are without knowledge of such marketing and promotion and therefore deny the allegations of this paragraph.

AMENDED COMPLAINT PARAGRAPH 10. Since the Claw Icon Mark and MONSTER ENERGY mark (collectively, the "MONSTER ENERGY Trademarks") are the MEC trademarks most commonly counterfeited and infringed by Defendants, MEC focuses its allegations on the MONSTER ENERGY Trademarks.

RESPONSE TO PARAGRAPH 10: Admitted that such focus is here implemented.

AMENDED COMPLAINT PARAGRAPH 11. MEC sponsors over 200 athletes and numerous athletic events in connection with its branded drinks, apparel, and accessories bearing one or both of the MONSTER ENERGY Trademarks. For example, MEC sponsors or has sponsored sporting events such as the X Games, the MONSTER ENERGY® AMA Supercross Series, Road Racing World Championship Grand Prix ("MotoGP") races, the MONSTER ENERGY® Billabong XXL Awards from 2005 to 2012, MX 1 and MX2 FIM Motocross World Championships, the Motocross of Nations, the MX3 FIM Motocross World Championships, the Motocross of Nations, the MX3 FIM Motocross World Championship, the FIM MX Junior World Championship, the UEM EMX2 European Motocross Championship. At MEC-sponsored events, the MONSTER ENERGY Trademarks are prominently promoted at the tracks, on banners, and on large transport, support, and hospitality tractor trailers, motor homes and other promotional vehicles.

RESPONSE TO PARAGRAPH 11: These Defendants are without knowledge of these allegations and therefore deny same.

AMENDED COMPLAINT PARAGRAPH 12. In addition to the sporting events above, MEC also sponsors athletes and athletic teams who compete in a wide variety of sports, including Formula 1, motocross, MotoGP, AMA Superbike, Supercross, World Superbike, surfing, skateboarding, wakeboarding, skiing, snowboarding, BMX, mountain biking, snowmobile racing, off-road racing, off-road truck racing, and NASCAR racing. Many of the events that the MEC-sponsored athletes and athletic teams compete in are broadcast nationally on television, and all of the MEC-sponsored athletes and teams wear clothing or gear or use equipment that prominently displays one or both of the MONSTER ENERGY Trademarks.

RESPONSE TO PARAGRAPH 12: These Defendants are without knowledge of these allegations and therefore deny same.

AMENDED COMPLAINT PARAGRAPH 13. MEC's MONSTER$^{TM}$ family of products has achieved substantial commercial success. Worldwide retail sales now exceed 2 billion cans per year with estimated retail sales exceeding US$5 billion per year worldwide. From 2002 to the present, MEC has sold more than 12 billion cans of energy drinks worldwide, all of which bear the Claw Icon Mark, MONSTER™ Mark, and/or MONSTER ENERGY® Mark. MEC's MONSTER ENERGY® brand has established itself as the best-selling energy drink brand in the U.S. As a result of MEC's substantial use and promotion of the MONSTER ENERGY Trademarks in connection with its MONSTERTM family of products, MEC's MONSTER ENERGY Trademarks have acquired great value as specific identifiers of MEC's products and serve to identify and distinguish MEC's products from those of others. Customers in this judicial district and elsewhere readily recognize MEC's MONSTER ENERGY Trademarks as distinctive designations of the origin of MEC's drinks, accessories, clothing products, sports bags and backpacks, sports gear and other products and promotional items. MEC's MONSTER ENERGY Trademarks are intellectual property assets of enormous value as symbols of MEC and its quality products, reputation, and goodwill.

RESPONSE TO PARAGRAPH 13: These Defendants are without knowledge of these allegations and therefore deny same.

14. MEC is the owner of numerous trademark registrations for the MONSTER ENERGY Trademarks, including the following U.S. Trademark Registrations:

[table of marks omitted]

RESPONSE TO PARAGRAPH 14: These Defendants are without knowledge of these allegations and therefore deny same.

15. The above registrations for the MONSTER ENERGY Trademarks are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the above MONSTER ENERGY Trademarks are attached hereto as Exhibit 1. Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 2,903,214, 3,057,061, and 3,134,842 are incontestable.

RESPONSE TO PARAGRAPH 15: These Defendants are without knowledge of these allegations and therefore deny same.

16. The MONSTER ENERGY Trademarks are distinctive and identify the merchandise as goods from MEC. The registrations for the MONSTER ENERGY Trademarks constitute prima facie evidence of their validity and of MEC's exclusive right to use the MONSTER ENERGY Trademarks pursuant to 15 U.S.C. § 1057 (b).

RESPONSE TO PARAGRAPH 16: These Defendants are without knowledge of these allegations and therefore deny same.

17. The MONSTER ENERGY Trademarks qualify as famous marks, as that term is used in 15 U.S.C. §1125 (c)(1), and have been continuously used and never abandoned.

RESPONSE TO PARAGRAPH 17: These Defendants are without knowledge of these allegations and therefore deny same.

18. In addition to its use on its energy drinks, MEC has continuously used the MONSTER ENERGY Trademarks on and in connection with the creation and distribution of Monster Energy Products. These items have been worn or used by numerous high profile athletes and entertainers sponsored by MEC. MEC has also licensed the MONSTER ENERGY Trademarks to third parties for use on stickers, clothing items, and sports bags. MEC has promoted its MONSTER™ drinks and Monster Energy Products in interstate and intrastate commerce, including commerce in the State of Illinois, and in this Judicial District.

RESPONSE TO PARAGRAPH 18: These Defendants are without knowledge of these allegations and therefore deny same.

19. MEC has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the MONSTER ENERGY Trademarks. As a result, products bearing the MONSTER ENERGY Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from MEC.

RESPONSE TO PARAGRAPH 19: These Defendants are without knowledge of these allegations and therefore deny same.

AMENDED COMPLAINT PARAGRAPH 20. Because of MEC's advertising and promotional efforts and its continuous use of the MONSTER ENERGY Trademarks for more than a decade, MEC is among the most recognized energy drink brands in the United States, and the MONSTER ENERGY Trademarks have become famous.

RESPONSE TO PARAGRAPH 20: These Defendants are without knowledge of these allegations and therefore deny same.

AMENDED COMPLAINT PARAGRAPH 21. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell Counterfeit Monster Energy Products to consumers within the United States, including the State of Illinois.

RESPONSE TO PARAGRAPH 21: These Defendants are without knowledge of these allegations and therefore deny same, except they admit they each reside in China, and deny that they have "targeted" Illinois consumers.

AMENDED COMPLAINT PARAGRAPH 22: On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing counterfeit versions of the MONSTER ENERGY Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for MEC to learn Defendants' true identities and the exact interworking of their massive counterfeit network. In the event that Defendants provide additional credible information regarding their identities, MEC will take appropriate steps to amend the Amended Complaint.

RESPONSE TO PARAGRAPH 22: Denied

AMENDED COMPLAINT PARAGRAPH 23: The success of the Monster Energy brand has resulted in its significant counterfeiting. Consequently, MEC has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and re-

ported by consumers. MEC has identified hundreds of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer and AliExpress, including the Defendant Internet Stores, which were offering for sale, selling, and importing Counterfeit Monster Energy Products to consumers in this Judicial District and throughout the United States. Despite MEC's enforcement efforts online, Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2013 was over $1.74 billion, up from $1.26 billion in 2012. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

RESPONSE TO PARAGRAPH 23: These Defendants are without knowledge of these allegations and therefore deny same, except they admit the allegation that MEC has heretofore failed to exert reasonable efforts to protect and enforce its trademarks, wherefore it has lost the right to collect past damages and statutory damages from innocent infringements of its marks by others, as mere online resale of goods commonly available.

AMENDED COMPLAINT PARAGRAPH 24: Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Monster Energy Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Numerous Defendant Domain Names also incorporate the MONSTER ENERGY trademark into the URL, and the Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. MEC has not licensed or authorized Defendants to use its MONSTER ENERGY Trademarks, and none of the Defendants are authorized retailers of genuine Monster Energy Products.

RESPONSE TO PARAGRAPH 24: These Defendants are without knowledge of these allegations and therefore deny same, and allege that they expected to be free to resell items being

sold at wholesale unchallenged by MEC or others. They deny that their websites mimic any MEC website.

>AMENDED COMPLAINT PARAGRAPH 25: Upon information and belief, Defendants also deceive unknowing consumers by using the MONSTER ENERGY Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Monster Energy Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Monster Energy Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, MEC also seeks to disable Defendant Domain Names owned by Defendants that are the means by which the Defendants could continue to sell Counterfeit Monster Energy Products.

>RESPONSE TO PARAGRAPH 25: Denied as to these Defendants, who principally re-

sell other, non-MEC-branded goods and only incidentally any unrelated goods with MEC logos..

>AMENDED COMPLAINT PARAGRAPH 26. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Amended Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

>RESPONSE TO PARAGRAPH 26: Denied as to these three Defendants.

>AMENDED COMPLAINT PARAGRAPH 27: Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit Monster Energy Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being

counterfeit to one another, suggesting that the Counterfeit Monster Energy Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images, including content copied from MEC's monsterenergy.com website.

RESPONSE TO PARAGRAPH 27: These Defendants are without knowledge of these

allegations and therefore deny same.

AMENDED COMPLAINT PARAGRAPH 28: In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

RESPONSE TO PARAGRAPH 28: These Defendants are without knowledge of these

allegations and therefore deny same, and they deny using any such concealment "tricks".

AMENDED COMPLAINT PARAGRAPH 29: Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of MEC's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

RESPONSE TO PARAGRAPH 29: These Defendants are without knowledge of these allegations and therefore deny same, and they deny using any such tactics themselves

AMENDED COMPLAINT PARAGRAPH 30: Defendants, without any authorization or license from MEC, have knowingly and willfully used and continue to use the MONSTER ENERGY Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Monster Energy Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Monster Energy Products into the United States, including Illinois.

RESPONSE TO PARAGRAPH 30: These Defendants admit they have no express license from MEC but deny that they need any license to resell commonly available, unchallenged merchandise acquired lawfully from others.

AMENDED COMPLAINT PARAGRAPH 31: Defendants' use of the MONSTER ENERGY Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Monster Energy Products, including the sale of Counterfeit Monster Energy Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming MEC.

RESPONSE TO PARAGRAPH 31: These Defendants deny these allegations and assert that their products bearing the MEC claw mark tend to promote MEC drink products in the same ways as MEC's own advertising does.

**COUNT I**

AMENDED COMPLAINT PARAGRAPH 32. MEC re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 31.

RESPONSE TO PARAGRAPH 32: The above responses to paragraphs 1 through 31 are incorporated here by reference.

AMENDED COMPLAINT PARAGRAPH 33. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of coun-

Case: 1:15-cv-04166 Document #: 68 Filed: 07/14/15 Page 13 of 18 PageID #:6278

terfeit imitations of the registered MONSTER ENERGY Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The MONSTER ENERGY Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Monster Energy Products provided under the MONSTER ENERGY Trademarks.

RESPONSE TO PARAGRAPH 33: Admitted that the action is so characterized, but these defendants are without knowledge as to the other allegations so they are denied.

AMENDED COMPLAINT PARAGRAPH 34. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products bearing counterfeit reproductions of the MONSTER ENERGY Trademarks without MEC's permission.

RESPONSE TO PARAGRAPH 34: Denied as to these e defendants, except admitted that unrelated products bearing MEC logos in an advertising or promotional capacity have been offered for sale, but denied that any accused product of any of these 3 Defendants has been sold into the USA

AMENDED COMPLAINT PARAGRAPH 35. MEC is the exclusive owner of the MONSTER ENERGY Trademarks. MEC's United States Registrations for the MONSTER ENERGY Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of MEC's rights in the MONSTER ENERGY Trademarks, and are willfully infringing and intentionally using counterfeits of the MONSTER ENERGY Trademarks. Defendants' willful, intentional and unauthorized use of the MONSTER ENERGY Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

RESPONSE TO PARAGRAPH 33: Denied that these 3 Defendants had knowledge as to any of the MEC trademarks being "famous" and denied that any willful infringement has occurred, since the products these 3 defendants have resold were offered freely by several Chinese distributors without apparent legal challenge for years until this suit was filed and served, and because on information and belief MEC sells only energy drinks, not vehicle wrap, gloves, or helmets.

Page 13 of 18

AMENDED COMPLAINT PARAGRAPH 36. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

RESPONSE TO PARAGRAPH 36. Denied.

AMENDED COMPLAINT PARAGRAPH 37. MEC has no adequate remedy at law, and if Defendants' actions are not enjoined, MEC will continue to suffer irreparable harm to its reputation and the goodwill of its well-known MONSTER ENERGY Trademarks.

RESPONSE TO PARAGRAPH 37. Denied; each of these three Defendants ceased offering for sale the accused products as soon as notice of the original suit was received. .

AMENDED COMPLAINT PARAGRAPH 38. The injuries and damages sustained by MEC have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Monster Energy Products.

RESPONSE TO PARAGRAPH 38: Denied that any actual or substantive damage has been caused to MEC by these Defendants' offering for resale the commercially available products as they did.

## COUNT II

AMENDED COMPLAINT PARAGRAPH 39: MEC hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 38.

RESPONSE TO PARAGRAPH 32: The above responses to paragraphs 1 through 31 are incorporated here by reference.

AMENDED COMPLAINT PARAGRAPH 40 Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Monster Energy Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with MEC or the origin, sponsorship, or approval of Defendants' Counterfeit Monster Energy Products by MEC.

RESPONSE TO PARAGAPH 40: Denied, as the 3 Defendants' products are not energy drinks, are of good quality, promote MEC's drinks to some extent, and have until now been unchallenged by MEC/

AMENDED COMPLAINT PARAGRAPH 41: By using the MONSTER ENERGY Trademarks on the Counterfeit Monster Energy Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Monster Energy Products.

RESPONSE TO PARAGRAPH 41. Denied, as no consumer would .think that MEC does its own advertising for its energy drink products.

AMENDED COMPLAINT PARAGRAPH 42: Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Monster Energy Products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

RESPONSE TO PARAGRAPH 42. Denied.

AMENDED COMPLAINT PARAGRAPH 43: MEC has no adequate remedy at law and, if Defendants' actions are not enjoined, MEC will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

RESPONSE TO PARAGRAPH 43. Denied.

## COUNT III

AMENDED COMPLAINT PARAGRAPH 44: MEC hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 43.

RESPONSE TO PARAGRAPH 44: The above responses to paragraphs 1 through 43 are incorporated here by reference.

AMENDED COMPLAINT PARAGRAPH 45: MEC is the exclusive owner of the MONSTER ENERGY Trademarks. The U.S. trademark registrations for the MONSTER ENERGY Trademarks (**Exhibit 1**) are in full force and effect. Additionally, the MONSTER ENERGY Trademarks are highly distinctive and famous marks pursuant to 15 U.S.C. § 1125 and were famous before and at the time of the registration of the Defendant Domain Names.

RESPONSE TO PARAGRAPH 45. No answer required, as no domain name of any of these 3 Defendants is at issue here.

AMENDED COMPLAINT PARAGRAPH 46: Upon information and belief, Defendants operating a Defendant Domain Name incorporating the MONSTER ENERGY Trademarks have acted with bad faith intent to profit from the unauthorized use of the MONSTER ENERGY Trademarks and the goodwill associated therewith by registering, trafficking in, or using various domain names which are identical to, confusingly similar to, or dilutive of the MONSTER ENERGY Trademarks.

RESPONSE TO PARAGRAPH 46. No answer required, as no domain name of any of these 3 Defendants is at issue here.

AMENDED COMPLAINT PARAGRAPH 47: Defendants have no intellectual property rights in or to the MONSTER ENERGY Trademarks.

RESPONSE TO PARAGRAPH 47: Admitted except denied to the extent that MEC has slept on its rights by not enforcing its claim to trademark exclusivity for any of the accused products of these 3 Defendants..

AMENDED COMPLAINT PARAGRAPH 48: Defendants' actions constitute willful cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

RESPONSE TO PARAGRAPH 48. No answer required, as no domain name of any of these three Defendants is at issue here.

AMENDED COMPLAINT PARAGRAPH 49: MEC has no adequate remedy at law, and the registration and use of the Defendant Domain Names incorporating the MONSTER ENERGY Trademarks has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to MEC.

RESPONSE TO PARAGRAPH 49. No answer required, as no domain name of any of these three Defendants is at issue here.

COUNT IV

AMENDED COMPLAINT PARAGRAPH 50: MEC hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 49.

RESPONSE TO PARAGRAPH 50: The above responses to paragraphs 1 through 49 are incorporated here by reference.

AMENDED COMPLAINT PARAGRAPH 51: Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Monster Energy Products as those of MEC, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Monster Energy Products, representing that their products have MEC's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

RESPONSE TO PARAGRAPH 51: Denied.

AMENDED COMPLAINT PARAGRAPH 52: The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

RESPONSE TO PARAGRAPH 52: Denied.

AMENDED COMPLAINT PARAGRAPH 53: MEC has no adequate remedy at law, and Defendants' conduct has caused MEC to suffer damage to its reputation and goodwill. Unless enjoined by the Court, MEC will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

RESPONSE TO PARAGRAPH 53: Denied; as any offering of MED-logoed products was discontinued promptly upon receiving notice of the suit.

## PRAYER FOR RELIEF

FURTHER ANSWERING THE AMENDED COMPLAINT, these 3 Defendants deny that any right exists in MEC to belatedly now start to enforce its alleged trademark rights as against unrelated products made and sold in China for resale to the USA and elsewhere not competing with MEC's energy drink products and other licensed products.

Each of these 3 Defendants prays for relief against MEC including an award of their costs and fees reasonably incurred in defending this suit, and for their damages suffered from disruption of their businesses in their other products by MEC's having this Court issue an Order freezing their PayPal accounts in whole or in part, in amounts to be determined.

Dated this  14th  day of June 2015.     Respectfully submitted,

/ s / John R. Crossan/_____
Crossan IP Law, LLC
875 N Michigan Ave., #3216
Chicago, IL  60611-1960
312-498-2365
Fax:  312-264-0770
jrc@crossaniplaw.com

## CERTIFICATE OF SERVICE

A true copy of the foregoing RESPONSE OF THREE DEFENDANTS TO THE AMENDED COMPLAINT is being served on counsel for other parties with appearances in the case by way of the Court's CM/ECF system, including on Plaintiff's counsel as below, this 14th day of July, 2015.

Kevin W. Guynn, Esq.
Amy C. Ziegler, Esq
Justin R. Gaudio, Esq
Jessica L. Bloodgood, Esq
GREER, BURNS & CRAIN, LTD.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 (facsimile)

  /s/ John R. Crossan/_____