**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MONSTER ENERGY COMPANY, Plaintiff, | ) | Case No. 15-cv-4166 |
| v. | ) | **Judge Joan H. Lefkow** |
| CHEN WENSHENG, et al., Defendants. | ) | **Magistrate Judge Daniel G. Martin** |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND TO RELEASE FROZEN FUNDS**

## I. INTRODUCTION

Plaintiff Monster Energy Company ("Plaintiff" or "MEC") filed this action against Defendants[1] alleging trademark counterfeiting and copyright infringement [7], [21], and [53]. Among the named Defendants is Defendant Wu Zou d/b/a the Defendant Internet Store Legend Trading Co., Ltd (hereinafter, "Legend Trading"), an AliExpress Internet store that was offering for sale counterfeit products featuring MEC's registered trademarks (the "MONSTER ENERGY Trademarks") and infringing MEC's registered copyrights (the "Copyrighted Designs") (collectively, the "Counterfeit Monster Energy Products") to Illinois residents. *See infra* Section II.C.

On May 20, 2015, this Court, finding that evidence submitted by MEC demonstrated an immediate and irreparable injury, loss, or damage to MEC and a strong likelihood of success on the merits, properly exercised jurisdiction over Defendants and granted MEC's *Ex Parte* Motion

[1] Defendants are operating the Online Marketplace Accounts and Defendant Domain Names (collectively, the "Defendant Internet Stores") listed in Amended Schedule A to the Second Amended Complaint [53].

for Entry of a Temporary Restraining Order (the "TRO") [22], which was subsequently converted into a Preliminary Injunction ("PI") [33]. On June 23, 2015, Defendant Legend Trading filed a Motion to Dismiss and to Release Frozen Funds [50], alleging lack of personal jurisdiction (the "Motion"). The Court's entry of the TRO and PI was correct both on its facts and in the law, and the Motion should be denied. Specifically, jurisdiction exists over Legend Trading since it reached out to do business with Illinois residents by operating one or more commercial, interactive Internet stores through which Illinois residents could purchase counterfeit products featuring MEC's registered trademarks and infringing MEC's registered copyrights. *See Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010).

## II. BACKGROUND

### A. Plaintiff

MEC is a worldwide leader in the business of developing, marketing, selling and distributing beverages, including energy drinks. Declaration of Bruce Kingsland (the "Kingsland Dec.") at ¶ 3. MEC also uses the MONSTER ENERGY Trademarks and Copyrighted Designs on and in connection with the creation and distribution of a large variety of products, including, but not limited to, stickers, clothing items, helmets, headgear, sports gear, and sports bags that bear Claw Icon Mark, MONSTER™ mark, and/or MONSTER ENERGY® mark (collectively, the "Monster Energy Products"). *Id*. at ¶ 4. Additionally, MEC sponsors over 200 athletes and numerous athletic, music, and entertainment events in connection with its branded drinks, apparel, and accessories bearing one or both of the MONSTER ENERGY Trademarks. *Id.* ¶ 5. For example, MEC sponsored "The Street Series" in Grant Park, Chicago, Illinois in July 2015, which was attended by hundreds of bicycle BMX riders. *Id.* Since 2008, MEC has also been a sponsor of the Vans Warped Tour, a yearly nationwide concert tour with a Chicago, Illinois stop

(the stop in Chicago, Illinois was the tour's greatest attended stop for the period of 2008 to 2011). *Id*. For 2015, MEC was a "Featured Sponsor" of the Vans Warped Tour, which had a stop at the First Midwest Bank Amphitheatre on July 25, 2015, in Chicago, Illinois. ***Id.***

MEC's MONSTER™ family of products has achieved substantial commercial success. *Id*. at ¶ 6. Worldwide retail sales now exceed 3 billion cans per year with estimated retail sales exceeding US$6 billion per year worldwide. *Id.* MEC's MONSTER ENERGY® brand has established itself as the best-selling energy drink brand in the U.S. by unit volume in the measured energy drink market. *Id*. In Illinois alone, millions of dollar' worth of MEC's MONSTER™ family of products have been sold to Illinois residents through brick and mortar accounts such as 7-Eleven, Walmart, Costco, Sam's Club, CVS, Walgreens, Target, and Circle K, to name a few. *Id.* ¶ 7.

**B. Alibaba Group Holding Ltd. and Its AliExpress.com Platform**

Legend Trading is a commercial Internet Store on the global marketplace AliExpress.com ("AliExpress"), a unit of Alibaba Group Holding Ltd. ("Alibaba"). Declaration of Allyson Martin (the "Martin Dec.") at ¶ 2. Alibaba platforms, including AliExpress, are notorious for selling counterfeit products. *Id*. at ¶¶ 3-4. AliExpress is Alibaba's English language global retail marketplace for Chinese sellers to target and sell to consumers worldwide, many of them located in the United States. *Id.* at ¶ 5. AliExpress operates the AliExpress Seller Center and AliExpress University, where Chinese sellers learn techniques for targeting United States buyers, including purchasing habits, payment, and shipping logistics. Declaration of Lily Fu (the "Fu Dec."), at ¶¶ 21-22. *See also* Martin Dec. at ¶¶ 16, 17.

All prices on AliExpress are quoted in U.S. dollars, and a variety of options are available for shipping products to the United States. Martin Dec. at ¶ 5. AliExpress sellers create

shipping templates prior to posting any products, where the AliExpress seller must affirmatively select the countries to which they will ship products and exclude the countries to which they will not ship. Fu Dec. at ¶¶ 5-18. When listing a product for sale, AliExpress sellers also agree to comply with the "Product Listing Policy," which requires that a seller "not post or sell any item that is restricted or prohibited by a federal, state, or local law in any country or jurisdiction." *Id*. at ¶¶ 18-20. It further warns sellers "that [AliExpress] functions as a global marketplace, thus the selling or posting of items may be prohibited because of laws outside of the jurisdiction where you reside." *Id*. at ¶ 20. AliExpress also has a predominately featured "IP area" to warn sellers about violating intellectual property rights. *Id*. at ¶ 23. *See also* Martin Dec. at ¶ 18.

As part of its counterfeit enforcement program, MEC's counsel has purchased over one hundred sample counterfeit products from AliExpress sellers that were shipped to and received in Chicago, Illinois. Martin Dec at ¶ 6. Included among these products are over a dozen Counterfeit Monster Energy Products that were shipped to Illinois. *Id*.

**C. Legend Trading's Counterfeiting Activities and Targeting Illinois Residents**

Legend Trading is an AliExpress Internet store offering Counterfeit Monster Energy Products for sale to United States and Illinois residents. *Id*. at ¶ 7. The Counterfeit Monster Energy Product images confirm Legend Trading's use of counterfeit versions of the MONSTER ENERGY Trademarks and infringement of the Copyrighted Designs. *Id.*

Legend Trading elected to do business with the United States by affirmatively selecting a shipping template for the Counterfeit Monster Energy Product to ship products to the United States via China Post Registered Air Mail, with free shipping and an estimated delivery time of 15-26 days. *Id*. at ¶ 8. Additionally, feedback posted by buyers on Legend Trading's store confirms that products were shipped to U.S.-based buyers. *Id*. at ¶ 9.

MEC's investigator placed an order on Legend Trading for a Counterfeit Monster Energy Product. *Id*. at ¶ 10. Legend Trading described the item as a "Free Shipping 2014 New Spring and Autumn Motocross Gloves Bicycle Gloves Pro-biker Half Finger Leather Gloves" and offered it for sale at $8.99 with 8991 pieces and three colors available. *Id*. The "Review Your Order" page confirms the Chicago, Illinois shipping address and delivery time to said address.[2] *Id*.

Subsequently, MEC's investigator engaged in a chat conversation with Legend Trading through Mike zou on March 11, 2015. *Id*. at ¶ 11. Legend Trading confirmed that MEC's investigator could pay by PayPal, and provided the PayPal account associated with the email address zwfwfl159@163.com. *Id*. Legend Trading asked MEC's investigator to specify what product MEC's investigator wanted. *Id*. MEC's investigator provided Legend Trading with order number 66266739462744, where MEC's investigator ordered Counterfeit Monster Energy Products with shipping to Chicago, Illinois. *Id*.

The PayPal transaction log for the account associated with the email address zwfwf159@163.com ("Legend Trading's PayPal Account") lists seventy five (75) transactions with United States residents, including one (1) transaction with a Chicago, Illinois resident. *Id*. at ¶ 13. Many of the entries fail to provide detail sufficient to determine the products sold for a particular transaction. *Id*.

[2] The Lanham Act does not require a completed purchase for actionable infringement to exist – an offer for sale is sufficient. *See infra* Section III.A.3.a. MEC's investigator did not submit a payment for the Counterfeit Monster Energy Products because any payment submitted to Legend Trading further supports its counterfeiting operation. Upon information and belief, Chinese based Internet Store operators hold most of their assets in China, making it easy to hide or dispose of assets. For example, many Defendants in previous, similar cases have failed to satisfy the judgments entered against them. Further, the hundreds of similar counterfeit Internet Stores encountered by MEC make sending payments to each of them logistically unfeasible.

## III. ARGUMENT

### A. This Court Properly Exercised Personal Jurisdiction over Legend Trading

The Court properly exercised jurisdiction over Legend Trading because the properly pled facts and evidence MEC presented, even without the benefit of formal discovery, established that Legend Trading targeted its business activities toward consumers in Illinois by operating a commercial, heavily interactive Internet store to lure Illinois residents into purchasing Counterfeit Monster Energy Products.

(1) <u>Personal Jurisdiction Legal Background</u>

Plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("Jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits."). Where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citing Fed. R. Civ. P. 4(k)(1)(A)).

Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities. *Tamburo*, 601 F.3d at 702 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The exercise of specific personal jurisdiction must also comport with traditional notions of fair play and substantial justice. *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). That a foreign corporation avails itself of "the benefits

of an economic market in the forum State" is sufficient to establish personal jurisdiction "even if it has no physical presence in the State." *Quill Corp. v. North Dakota*, 504 U.S. 298, 307 (1992).

The Seventh Circuit's decision in *Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010) compels the conclusion that Legend Trading purposefully availed itself of the privilege of conducting business in Illinois. Hemi Group LLC ("Hemi") was a company based in New Mexico that sold discount cigarettes over the Internet. *Id*. at 755. Hemi did not specifically single out Illinois residents on its websites, was not registered to do business in Illinois, and did not have offices or employees in Illinois. *Id*. at 756. Instead, the only forum contacts alleged in the State of Illinois' complaint were Hemi's offer for sale and sale of cigarettes to an agent from the Illinois Department of Revenue. *Id*. at 755. Hemi's websites advertised its products to customers in every state except New York. *Id*. Based on these contacts, the Seventh Circuit affirmed the district court's assertion of specific personal jurisdiction over Hemi:

> Hemi created several commercial, interactive websites through which customers could purchase cigarettes from Hemi. Hemi held itself out as open to do business with every state (including Illinois) except New York. After the customers made their purchases online, Hemi shipped the cigarettes to their various destinations. It is Hemi reaching out to residents of Illinois, and not the residents reaching back, that creates the sufficient minimum contacts with Illinois that justify exercising personal jurisdiction over Hemi in Illinois.

*Hemi Group LLC*, 622 F.3d at 758. *See also Valtech, LLC v. 18th Ave. Toys Ltd.*, 2015 U.S. Dist. LEXIS 17138, at *11-12 (N.D. Ill. Feb. 12 2015) (holding that there was no evidence that contacts with Illinois were "fortuitous," because "[d]efendants aimed their alleged tortious products to residents in all fifty states and 'made [their] services available to anyone by way of [their] website[s]", even through Amazon.com); *Virgin Enters. v. Jai Mundi*, Inc., 2014 U.S. Dist. LEXIS 98437, at *10 (N.D. Ill. July 18, 2014) (the court applied *Hemi Group* to determine that personal jurisdiction was proper over a defendant that was offering to sell and selling goods

over the Internet that were infringing a trademark); *Dental Arts Lab., Inc. v. Studio 360 the Dental Lab, LLC*, 2010 U.S. Dist. LEXIS 124029 at *17-18 (N.D. Ill. Nov. 23, 2010) (finding that company holding itself open to selling products to residents of any state, including Illinois, had purposefully availed itself of the privilege of conducting activities in Illinois); *Chloé v. Queen Bee of Beverly Hills*, 616 F.3d 158, 171 (2d Cir. 2010) (finding that interactive, commercial website selling counterfeit handbags purposefully availed itself of the privilege of conducting activities within the forum state); *Andra v. Left Gate Property Holding, Inc.*, 453 S.W.3d 216, 229 (Mo. Feb. 24, 2015) (citing *Hemi Group* and finding that defendant's eBay transactions with Missouri residents created intentional, substantial connections with Missouri).

In light of *Hemi Group*, the Court in *Deckers Corp. v. Does 1-500* found that personal jurisdiction existed over China based defendants operating commercial, interactive Internet stores offering to sell counterfeit products to the United States, including Illinois. *Deckers Corp. v. Does 1-500*, No. 1:11-cv-00010 (N.D. Ill. Oct. 14, 2011) (Docket No. 69) (unpublished). Since *Deckers Corp.*, thirty-one (31) different Courts in this District in over two hundred (200) cases have properly exercised jurisdiction over defendants operating commercial, interactive Internet stores offering to sell counterfeit products to the United States, including Illinois. *See, e.g., Coach, Inc. and Coach Services, Inc. v. The Partnerships, et al. v. The Partnerships, et al.*, No. 1:14-cv-09924 (N.D. Ill. Feb. 12, 2015) (Lefkow, J.). Martin Dec. at ¶ 14.

(2) Legend Trading's Unsupported Declaration Is Insufficient to Rebut This Court's Finding that Personal Jurisdiction Is Proper

Since this Court has already found that personal jurisdiction exists over Legend Trading, Legend Trading bears the burden of establishing that the Court lacked jurisdiction in the first instance and must present facts that rebut MEC's *prima facie* case with affidavits or exhibits in opposition to the exercise of jurisdiction. *Purdue Research Found.*, 338 F.3d at 782.

Legend Trading's Memorandum [51] is supported only by the Declaration of Wu Zou [52][3] and attorney argument. Arguments in a brief, unsupported by documentary evidence, are not evidence. *Medallion Prods. v. McAlister*, 2008 U.S. Dist. LEXIS 80550, at *8 (N.D. Ill. Oct. 9, 2008) ("As it must, the court has disregarded any unsupported factual statements") (citing *United States v. Stevens*, 500 F.3d 625, 628-29 (7th Cir. 2007) ("[I]t is universally known that statements of attorneys are not evidence.")). The only evidence submitted by Legend Trading was an excerpt of evidence previously submitted by MEC. *See supra* note 3. Accordingly, Legend Trading's declaration is insufficient to rebut MEC's *prima facie* case of personal jurisdiction.[4]

(3) Legend Trading's Intentional Actions Targeted Illinois, so Legend Trading Purposefully Availed Itself of Jurisdiction in Illinois

Even if Legend Trading's unsubstantiated declaration is given consideration, the evidence in this case confirms that personal jurisdiction was properly asserted over Legend Trading in Illinois.

a. *Legend Trading's Offer for Sale of Counterfeit Products on Its AliExpress Internet Store Constitutes Tortious Activity Committed in Illinois*

The Illinois long-arm statute provides that torts committed in Illinois by a defendant authorize the exercise of specific jurisdiction over that defendant. 735 ILCS § 5/2-209(a)(2). Under the plain language of 15 U.S.C. § 1114 – an offer to sell an infringing or counterfeit item, even without any other activity, establishes liability for trademark infringement and

[3] Legend Trading's Exhibit A attempts to deceive this Court by attaching only an excerpt of MEC's evidence. The entire exhibit was filed as pages 113-132 of Part 17 of Exhibit 2 to [13]. [27-7].

[4] If, however, the Court believes an evidentiary hearing is necessary to resolve factual disputes, MEC would welcome the opportunity to present their evidence at such a hearing to assess the credibility of MEC's evidence in contrast to the unsubstantiated, self-serving declaration submitted by Legend Trading. *See Durukan Am., LLC v. Rain Trading, Inc.*, No. 14-3016, 2015 U.S. App. LEXIS 9240, *5-6 (7th Cir. June 3, 2015).

counterfeiting. *Levi Strauss v. Shilon,* 121 F.3d 1309, 1312 (9th Cir. 1997). Displaying photos of an item for sale, and inviting potential purchasers to place an order and buy the product through an Internet store is an offer for sale. *See Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 U.S. Dist. LEXIS 92890, at *35 (W.D. Wash. July 16, 2015).

As such, Legend Trading's offer for sale of Counterfeit Monster Energy Products on its AliExpress Internet store constitutes tortious activity committed in Illinois. "As long as one tortious act is committed in Illinois, the courts of the state, and thus this Court, may exercise personal jurisdiction over Defendant." *Dental Arts Lab.*, 2010 U.S. Dist. LEXIS 124029, at *7. *See also Gucci Am., Inc. v. Exclusive Imps. Int'l*, 2007 U.S. Dist. LEXIS 19532, at *27-28 (S.D.N.Y. Mar. 14, 2007) ("Offering one copy of an infringing work for sale in New York, even if there is no actual sale, constitutes commission of a tortious act within the state sufficient to imbue this Court with personal jurisdiction") (internal citations omitted).

b. *The Facts Are Directly Analogous to the Controlling Illinois v. Hemi Group LLC Case*

In *Hemi Group*, the defendant was sued by the State of Illinois for selling cigarettes to Illinois residents in violation of Illinois state laws and in violation of federal reporting laws. *Hemi Group*, 622 F.3d at 755. Here, Legend Trading was similarly sued for violation of federal law and Illinois state law related to trademark infringement, counterfeiting and copyright infringement. [53] at ¶¶ 34-62. As in *Hemi Group*, MEC's claims arise out of Legend Trading's forum-related activities and contacts with Illinois residents.

Further, as was the case in *Hemi Group*, Legend Trading's intentional actions created contacts with Illinois residents. Hemi Group operated a nationwide business model where they intentionally created and operated several commercial, interactive websites to offer products for sale and allow online orders from Illinois residents. *Hemi Group*, 622 F.3d at 757-58. Similarly,

in this case, Legend Trading intentionally created and operated a commercial, fully interactive AliExpress Internet store through which Counterfeit Monster Energy Products could be purchased, including affirmatively selecting a shipping template to ship Counterfeit Monster Energy Products to United States and Illinois residents. Martin Dec. at ¶¶ 7, 8. In doing so, Legend Trading expressly elected to do business with the residents of all fifty states, including Illinois, the fifth most populous state. *Hemi Group*, 622 F.3d at 758; *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 428 (7th Cir. 2010).

Moreover, courts have expressly declined to classify actions such as Legend Trading's as "utterly fortuitous" or "unilateral": Legend Trading "aimed their alleged tortious products to residents in all fifty states and 'made [their] services available to anyone by way of [their] website[s],'" and "[c]haracterizing the sales as unilateral is misleading . . . because it ignores several of [Defendants'] own actions that led up to and followed the sales." *Valtech, LLC*, 2015 U.S. Dist. LEXIS 17138, at *12. *See also Hemi Group*, 622 F.3d at 758; *Ty, Inc. v. Baby Me, Inc.*, 2001 U.S. Dist. LEXIS 5761, at *14 (N.D. Ill. Apr. 20, 2001) (finding that there was no evidence to support defendant's argument that sales were pretextual).

Further, by posting the Counterfeit Monster Energy Products, Legend Trading agreed to AliExpress' Product Listing Policy and was aware that offering to sell items may be prohibited because of laws outside of the jurisdiction where they reside. *See* Fu Dec. at ¶¶ 18-20. Therefore, as in *Hemi Group*, Legend Trading should have foreseen being subject to litigation in the United States, including Illinois, as a result of posting and offering to sell Counterfeit Monster Energy Products.

"*Hemi [Group]* also shows that the precise dollar value of Defendants' sales to Illinois customers—either as an absolute number or as a percentage of total sales—is not dispositive for

purposes of determining whether specific personal jurisdiction exists." *Virgin Enters.*, 2014 U.S. Dist. LEXIS 98437, at *12. *Cf. Daimler AG v. Bauman*, 134 S.Ct. 746, 762 n.20 (2014) ("General jurisdiction . . . . calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide"). *See also Dental Arts Lab.*, 2010 U.S. Dist. LEXIS 124029, at *7 ("That Defendant's sales in Illinois form a relatively small part of its business is irrelevant to the personal jurisdiction analysis under these circumstances. Each time that Defendant used its allegedly-confusing name in Illinois a tortious act allegedly was committed."); *Ty, Inc.*, 2001 U.S. Dist. LEXIS 5761, at *14 ("[Defendant] claims that, at best, it only engaged in sporadic commercial activity in Illinois. The fact that [defendant's] contacts may have been limited does not, however, automatically mean that its contacts with Illinois were so minimal that it could not reasonably expect to be haled into an Illinois court."); *Vesuvius Techs., LLC v. ServerCentral, Inc.*, 2013 U.S. Dist. LEXIS 63644, at *21 (E.D. Wisc. May 3, 2013) (applying *Hemi Group* to case involving Internet-based seller who sold products to Wisconsin residents, without evidence that defendant ever physically shipped anything into Wisconsin).

Here, Legend Trading reached out to do business with Illinois residents, received orders from Illinois residents with Illinois shipping addresses[5] on its AliExpress store, and knowingly provided PayPal payment instructions to complete the orders. Martin Dec. at ¶¶ 7, 8, 10, 11. Accordingly, both Legend Trading's forum-related activities and its intentional and purposeful contacts with Illinois residents subject it to personal jurisdiction in Illinois.[6]

[5] *See Hill v. Shell Oil Co.*, 209 F. Supp. 2d 876, 880 (N.D. Ill. 2002) (lawyers can employ persons to play the role of customers seeking services on the same basis as the general public and can record protected employees going about their activities in what those employees believe is the normal course); *Cartier v. Symbolix, Inc.*, 386 F. Supp. 2d 354, 362 (S.D.N.Y. 2005).

[6] Alternatively, personal jurisdiction is proper in this Court pursuant to Fed. R. Civ. P. 4(k)(2) ("Rule 4(k)(2)"). Rule 4(k)(2) provides for personal jurisdiction through nationwide service of process over any defendant provided that: (1) the plaintiff's claims are based on federal law; (2) no state court could

(4) Personal Jurisdiction Over Legend Trading Satisfies Traditional Notions of Fair Play and Substantial Justice

The exercise of personal jurisdiction over Legend Trading complies with traditional notions of fair play and substantial justice. *See Tamburo*, 601 F.3d 693 at 709 (citing *Int'l Shoe*, 326 U.S. at 316). Relevant considerations in this "final look at fairness" include the burden on Legend Trading, the forum state's interest in adjudicating the dispute, MEC's interest in obtaining convenient and effective relief, the interstate judicial system's interest in efficiently resolving controversies, and the shared interest of the states in furthering fundamental substantive social policies. *Virgin Enters.*, 2014 U.S. Dist. LEXIS 98437, at *15-16. These factors rarely will justify a determination against personal jurisdiction. *Id.* (citing *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781 n.10 (7th Cir. 2003)).

Under both the Illinois Long Arm Statute and Rule 4(k)(2), notions of fair play and substantial justice are satisfied in this case because MEC distributes its Monster Energy Products through various Illinois and United States retailers. Kingsland Dec. at ¶¶ 6, 7. Illinois has a strong interest in protecting Illinois consumers from being duped into purchasing Counterfeit Monster Energy Products. Furthermore, modern transportation and communications have made it much less burdensome for a party to defend itself in a State where he derives economic

exercise jurisdiction over the defendants; (3) the exercise of jurisdiction is consistent with the laws of the United States; and (4) the exercise of jurisdiction is consistent with the Constitution. *Cent. States, Southeast and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000). Rule 4(k)(2) extends federal jurisdiction over non-resident defendants having sufficient contacts with the United States as a whole, but having insufficient contact with any single state to support jurisdiction. Fed. R. Civ. P. 4(k)(2) advisory committee's note (citing *Omni Capital Int.'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 111 (1987)). The first element of Rule 4(k)(2) is satisfied here because MEC's claims arise under federal trademark law. Likewise, the second element is satisfied because Legend Trading has not named a suitable forum state. *See Robert Bosch LLC v. Trico Prods. Corp.*, 2013 U.S. Dist. LEXIS 103311, at *6 (N.D. Ill. July 24, 2013). The third and fourth elements of the Rule 4(k)(2) analysis require the same minimum contacts due process analysis conducted under Rule 4(k)(1)(A), the only difference being that the relevant forum is the United States as a whole, not an individual State. *Id.* at *5. As such, the third and fourth elements are satisfied here for the same reasons that satisfy the minimum contacts analysis required by Rule 4(k)(1)(A). *See* Section III.A.3.

benefits, and it usually will not be unfair to subject him to the burdens of litigating in another forum.[7] *Burger King*, 471 U.S. at 474. Likewise, Legend Trading has already retained local counsel and engaged in motion practice in this Court. *See Virgin Enters.*, 2014 U.S. Dist. LEXIS 98437, at *16. Given that Legend Trading had sufficient resources to purposefully avail itself of the Illinois market, it should have reasonably foreseen being subjected to jurisdiction and haled into court in Illinois. As such, there is no unfairness in requiring Legend Trading to defend a lawsuit in this Court. *Hemi Group*, 622 F.3d at 758 ("Hemi wants to have its cake and eat it, too: it wants the benefit of a nationwide business model with none of the exposure.").

(5) Cases Cited by Legend Trading Are Distinguishable

Despite its factual similarities to this case, Legend Trading does not attempt to distinguish *Hemi Group*. Instead, Legend Trading incorrectly applies *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc*. where the Court found that specific jurisdiction must rest on the litigation-specific conduct of the defendant in the proposed forum state. 751 F.3d 796, 801 (7th Cir. 2014). Based on this finding, the Court found that the sales to Indiana residents were not linked to the litigation because the goods sold on the website were non-infringing and were unrelated to the lawsuit. *Id*. Legend Trading's Memorandum [51] even quotes the following from Advanced Tactical: "it is unlikely that those few sales alone, **without some evidence linking them to the allegedly tortious activity**, would make jurisdiction proper." [51] at p. 5 (emphasis added) (quoting *Advanced Tactical*, 751 F.3d at 801). Conversely, in this case, jurisdiction is based on Legend Trading's offer for sale of Counterfeit Monster Energy Products to Illinois residents, which is inextricably linked to Legend Trading's tortious activity.

[7] Chicago's two international airports and dozens of law firms practicing intellectual property law minimize Legend Trading's burden of having to defend this litigation in Illinois.

### B. This Court Properly Restrained Legend Trading's PayPal Account

Once personal jurisdiction over a party is obtained, the District Court has authority to order the freezing of property under the party's control, whether the property is within or without the United States. *United States v. First Nat'l City Bank*, 379 U.S. 378, 384 (1965); *Dewitt, Porter, Huggett, Schumacher & Morgan, S.C. v. Kovalic*, 1995 U.S. App. LEXIS 15636, at *5 (7th Cir. June 21, 1995) (finding that because personal jurisdiction existed over movant, the Court had power to effectuate its order over movant's property). Since personal jurisdiction exists over Legend Trading, this Court properly entered the TRO[8] restraining funds in Legend Trading's PayPal Account. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 U.S. Dist. LEXIS 28917, at *61 (N.D. Ill. Nov. 8, 2005) (imposing an asset restraining order in a trademark infringement case). *See also* [11], pp. 30-32. Furthermore, Legend Trading has not met its burden to warrant this Court to consider dissolving the asset freeze.[9] *See Luxottica USA LLC v. The Partnerships, et al.*, No. 1:14-cv-09061 (N.D. Ill. June 18, 2015) (Docket No. 87).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and to Release Frozen Funds [50].[10]

---

[8] This Court properly required MEC to post a bond of ten thousand dollars ($10,000) because of the strong and unequivocal nature of MEC's evidence. The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in this Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 412 (4th Cir. 1999); Fed. R. Civ. P. 65(c).

[9] Legend Trading has not submitted any evidence regarding its PayPal Account's transactions. [52] at ¶ 8. Likewise, no discovery has taken place.

[10] If, however, this Court determines that MEC did not establish a *prima facie* case of personal jurisdiction, MEC requests the opportunity to conduct jurisdictional discovery and an evidentiary hearing. *See Black & Decker, Inc. v. Shanghai Xing Te Hao Indus. Co.*, 2003 U.S. Dist. LEXIS 10127, at *12 (N.D. Ill. June 13, 2003) ("[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous.") (internal quotation marks omitted).

Dated this 29th day of July 2015.

Respectfully submitted,

/s/ Justin R. Gaudio_____________
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net
jbloodgood@gbclaw.net

*Attorneys for Monster Energy Company*

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of July 2015, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send a "Notice of E-Filing" to the attorneys of record in this case.

/s/ Justin R. Gaudio_____________
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net
jbloodgood@gbclaw.net

*Attorneys for Monster Energy Company*