**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MONSTER ENERGY COMPANY,

               Plaintiff,

         v.

CHEN WENSHENG, *et al.*,

               Defendants.

Case No. 15-cv-4166

Judge Joan H. LefKow

Mag. Judge Daniel G. Martin

**DEFENDANT'S ANSWERS
TO SECOND AMENDED COMPLAINT**

Defendant Zhang Yuan, identified as owner of aliexpress store # 205139 (No. 180 in Dkt. No. 21-2) hereby sets forth his Answers to the Second Amended Complaint. Defendant responds to the individually enumerated paragraphs of the Second Amended Complaint as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. §501, *et seq.*, 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

**Answer: Admitted**

1

venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Amended Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of MEC's trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of MEC's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused MEC substantial injury in the State of Illinois.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

## II. INTRODUCTION

3.      This action has been filed by MEC to combat online counterfeiters who trade upon MEC's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products featuring MEC's registered trademarks (collectively, the "Counterfeit Monster Energy Products"). The Defendants create the Defendant Internet Stores by the hundreds or even thousands and design them to appear to be selling genuine MEC products, while actually selling Counterfeit Monster Energy Products to unknowing

consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. MEC is forced to file this action to combat Defendants' counterfeiting of MEC's registered trademarks and infringement of MEC's registered copyrights, as well as to protect unknowing consumers from purchasing Counterfeit Monster Energy Products over the Internet. MEC has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks and infringement of its copyrights as a result of Defendants' actions and seeks injunctive and monetary relief.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

## III. THE PARTIES

**Plaintiffs**

4. Plaintiff MEC is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them**

MEC is a nationwide leader in the business of developing, marketing, selling and distributing beverages, including energy drinks. In 2002, long before Defendants' acts described herein, MEC launched its MONSTER ENERGY® brand of drinks bearing its now famous

MONSTER ENERGY mark,  mark ("Claw Icon Mark"), and ⚡ design (with the U.S. Copyright Registrations for the ⚡ design, collectively referred to herein as the "Copyrighted Designs"). A true and correct representation of MEC's original MONSTER ENERGY® drink is shown below:



**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

6. MEC's successful line of MONSTER™ drinks has now grown to include numerous other well-known products, including, but not limited to, original Monster Energy® and Lo-Carb Monster Energy®; Monster™ Assault®; Juice Monster™ Khaos®; Juice Monster™ Ripper™, Ubermonster®; Monster Energy® Import and Monster Energy® Import Light; Punch Monster®; Monster Energy® Absolutely Zero; Monster Energy® Zero Ultra; Monster Energy® Ultra Blue; Monster Energy® Ultra Red; Monster Cuba-Lima®; Monster Rehab®, which is a line of noncarbonated energy drinks, which includes Monster Energy

Company's Monster Rehab® Rojo Tea + Energy, Monster Rehab® Green Tea + Energy, Monster Rehab® Tea + Orangeade + Energy, Monster Rehab® Tea + Pink Lemonade + Energy, and Monster Rehab® Tea + Lemonade + Energy products; Java Monster®, which is a line of dairy based coffee plus energy drinks; Muscle Monster®, which is a line of energy shakes; Monster Energy Extra Strength Nitrous Technology®, which is a line of energy drinks with a blend of nitrous oxide and carbon dioxide to create a smoother energy drink; and  ® Monster Energy® which is a five ounce super concentrated energy drink, among others (referred to collectively as "MONSTER™ line of energy drinks").

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

7.      Shown below are true and accurate representative pictures illustrating some of MEC's MONSTER™ line of drinks.



ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.

In addition to its MONSTER line of energy drinks, and before Defendants' acts described herein, MEC has used, and continues to use, its Claw Icon Mark, MONSTER™ mark, MONSTER ENERGY® mark, and Copyrighted Designs in connection with a large variety of other products, including, but not limited to, stickers, clothing items, helmets, headgear, sports gear, and sports bags that bear Claw Icon Mark, MONSTER™ mark, MONSTER ENERGY® mark, and/or Copyrighted Designs (collectively, the "Monster Energy Products"). Examples of authorized helmets, apparel and accessories bearing MEC's Claw Icon Mark, MONSTER™ mark, MONSTER ENERGY® mark, and/or Copyrighted Designs are shown below.








 

  

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

9.     Since the initial launch of its original MONSTER ENERGY® drink in 2002, MEC's Claw Icon Mark, MONSTER™ mark, MONSTER ENERGY® mark, and Copyrighted Designs are and have been the subject of substantial and continuous marketing and promotion by MEC in connection with its MONSTER™ line of drinks and MONSTER™ apparel and accessories.  MEC has and continues to widely market and promote its Claw Icon Mark, MONSTER™ mark, MONSTER ENERGY® mark, and Copyrighted Designs in the industry and to consumers.   MEC's promotional efforts include — by way of example but not limitation — substantial print media, the Monster Energy website and social media sites, point of sale materials, sponsorship of athletes and athletic teams, sponsorship of athletic competitions,

8

sponsorship of musicians, sponsorship of live and televised events, sweepstakes, music concerts, attendance at trade shows, product sampling, and apparel and merchandise.

> **ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

10.     Since the Claw Icon Mark and MONSTER ENERGY mark (collectively, the "MONSTER ENERGY Trademarks") are the MEC trademarks most commonly counterfeited and infringed by Defendants, MEC focuses its allegations on the MONSTER ENERGY Trademarks and Copyrighted Designs.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

11.     MEC sponsors over 200 athletes and numerous athletic events in connection with its branded drinks, apparel, and accessories bearing one or both of the MONSTER ENERGY Trademarks and/or the Copyrighted Designs.  For example, MEC sponsors or has sponsored sporting events such as the X Games, the MONSTER ENERGY® AMA Supercross Series, Road Racing World Championship Grand Prix ("MotoGP") races, the MONSTER ENERGY® Billabong XXL Awards from 2005 to 2012, MX 1 and MX2 FIM Motocross World Championships, the Motocross of Nations, the MX3 FIM Motocross World Championships, the Motocross of Nations, the MX3 FIM Motocross World Championship, the FIM MX Junior World Championship, and the UEM EMX2 European Motocross Championship.  At MEC-sponsored events, the MONSTER ENERGY Trademarks and/or the Copyrighted Designs are

prominently-provided racetracks, on trailers, and on large transport, support and hospitality tractor trailers, motor homes and other promotional vehicles.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

12.     In addition to the sporting events above, MEC also sponsors athletes and athletic teams who compete in a wide variety of sports, including Formula 1, motocross, MotoGP, AMA Superbike, Supercross, World Superbike, surfing, skateboarding, wakeboarding, skiing, snowboarding, BMX, mountain biking, snowmobile racing, off-road racing, off-road truck racing, and NASCAR racing.  Many of the events that the MEC-sponsored athletes and athletic teams compete in are broadcast nationally on television, and all of the MEC-sponsored athletes and teams wear clothing or gear or use equipment that prominently displays one or both of the MONSTER ENERGY Trademarks and/or the Copyrighted Designs.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

13.     MEC's MONSTER™ family of products has achieved substantial commercial success.  Worldwide retail sales now exceed 2 billion cans per year with estimated retail sales exceeding US$5 billion per year worldwide.  From 2002 to the present, MEC has sold more than 12 billion cans of energy drinks worldwide, all of which bear the Claw Icon Mark, MONSTER™ Mark, MONSTER ENERGY® Mark, and/or the Copyrighted Designs.  MEC's MONSTER ENERGY® brand has established itself as the best-selling energy drink brand in

the U.S. As a result of MEC's substantial use and promotion of the MONSTER ENERGY Trademarks and the Copyrighted Designs in connection with its MONSTER™ family of products, MEC's MONSTER ENERGY Trademarks and the Copyrighted Designs have acquired great value as specific identifiers of MEC's products and serve to identify and distinguish MEC's products from those of others. Customers in this judicial district and elsewhere readily recognize MEC's MONSTER ENERGY Trademarks and the Copyrighted Designs as distinctive designations of the origin of MEC's drinks, accessories, clothing products, sports bags and backpacks, sports gear and other products and promotional items. MEC's MONSTER ENERGY Trademarks and the Copyrighted Designs are intellectual property assets of enormous value as symbols of MEC and its quality products, reputation, and goodwill.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

14.     MEC is the owner of numerous trademark registrations for the MONSTER ENERGY Trademarks, including the following U.S. Trademark Registrations:

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|

| 2,903,214 | | Nov. 16, 2004 | For: Drinks, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and noncarbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not in class 032. |
|---|---|---|---|
| 3,057,061 | MONSTER ENERGY | Feb. 7, 2006 | For: fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not in class 032. |
| 3,134,841 | | Aug. 29, 2006 | For: Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not in class 032. |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 4,051,650 |  | November 8, 2011 | For: Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely hats and beanies in class 025. |
| 3,963,669 |  | May 17, 2011 | For: All-purpose sport bags; allpurpose carrying bags; backpacks; duffel bags in class 018. |
| 3,963,668 |  | May 17, 2011 | For: Stickers; sticker kits comprising stickers and decals; decals; posters in class 016. |
| 3,923,683 |  | February 22, 2011 | For: All-purpose sport bags; allpurpose carrying bags; backpacks; duffle bags in class 018. |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 3,908,601 |  | January 18, 2011 | For: Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies in class 025. |
| 3,908,600 |  | January 18, 2011 | For: Stickers; sticker kits comprising stickers and decals; decals in class 016. |
| 4,332,062 |  | May 7, 2013 | For: Silicone wrist bands; Silicone bracelets; Jewelry, namely, bracelets and wristbands in class 014. |
| 4,011,301 |  | August 16, 2011 | For: Sports helmets; video recordings featuring sports, extreme sports, and motor sports in class 009. |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|

14

| 3,914,828 | | February 1, 2011 | For: Sports helmets in class 009. |
|---|---|---|---|
| 4,660,598 | | December 23, 2014 | For: Lanyards; Lanyards for holding whistles, keys, eyeglasses, sunglasses, mobile telephones, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences in class 022. |

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

15. The above registrations for the MONSTER ENERGY Trademarks are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the above MONSTER ENERGY Trademarks are attached hereto as **Exhibit 1**. Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 2,903,214, 3,057,061, and 3,134,842 are incontestable.

**ANSWER: Admitted certificates are attached, otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

16. The MONSTER ENERGY Trademarks are distinctive and identify the merchandise as goods from MEC. The registrations for the MONSTER ENERGY Trademarks

15

constitute prima facie evidence of their validity and of MEC's exclusive right to use the MONSTER ENERGY Trademarks pursuant to 15 U.S.C. § 1057 (b).

> **ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

17.     The MONSTER ENERGY Trademarks qualify as famous marks, as that term is used in 15 U.S.C. §1125 (c)(1), and have been continuously used and never abandoned.

> **ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

18.     In addition to its use on its energy drinks, MEC has continuously used the MONSTER ENERGY Trademarks on and in connection with the creation and distribution of Monster Energy Products.  These items have been worn or used by numerous high profile athletes and entertainers sponsored by MEC.  MEC has also licensed the MONSTER ENERGY Trademarks to third parties for use on stickers, clothing items, and sports bags.  MEC has promoted its MONSTER™ drinks and Monster Energy Products in interstate and intrastate commerce, including commerce in the State of Illinois, and in this Judicial District.

> **ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

19.     MEC has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the MONSTER ENERGY Trademarks.  As a

resale products bearing the MONSTER ENERGY Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from MEC.

> **ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

20.     Because of MEC's advertising and promotional efforts and its continuous use of the MONSTER ENERGY Trademarks for more than a decade, MEC is among the most recognized energy drink brands in the United States, and the MONSTER ENERGY Trademarks have become famous.

> **ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

21.     MEC is the owner of various Copyrighted Designs, including but not limited to, "Stylized claw with jagged edges (original version)" (U.S. Copyright Registration No. VA 1-789900), issued by the Register of Copyrights on October 11, 2011, and "Stylized claw with jagged edges (2007)" (U.S. Copyright Registration No. VA 1-789-991), issued by the Register of Copyrights on October 11, 2011.  True and correct copies of the U.S. federal copyright registration certificates for the above-referenced Copyrighted Designs are attached hereto as **Exhibit 2**.

> **ANSWER: Admitted certificates are attached, otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

22.     Among the exclusive rights granted to MEC under the Copyright Act are the exclusive rights to use and reproduce the Copyrighted Designs and to distribute the Copyrighted Designs to the public.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

**The Defendants**

23.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions.  Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores.  Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell Counterfeit Monster Energy Products to consumers within the United States, including the State of Illinois.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

24.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing counterfeit versions of the MONSTER ENERGY Trademarks and unauthorized copies of the Copyrighted Designs in the same transaction, occurrence, or series of transactions or occurrences.  Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it

virtually impossible for MEC to learn Defendants' true identities and the exact interworking of their massive counterfeit network. In the event that Defendants provide additional credible information regarding their identities, MEC will take appropriate steps to amend the Second Amended Complaint.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

## IV. DEFENDANTS' UNLAWFUL CONDUCT

25.     The success of the Monster Energy brand has resulted in its significant counterfeiting. Consequently, MEC has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. MEC has identified hundreds of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer and Aliexpress, including the Defendant Internet Stores, which were offering for sale, selling, and importing Counterfeit Monster Energy Products to consumers in this Judicial District and throughout the United States. Despite MEC's enforcement efforts online, Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2013 was over $1.74 billion, up from $1.26 billion in 2012. Internet websites like the Defendant Internet Stores

are also estimated to contribute to tens of thousands of job losses of legitimate businesses and broader economic damages such as lost tax revenue every year.

> **ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

26. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Monster Energy Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Numerous Defendant Domain Names also incorporate the MONSTER ENERGY trademark into the URL, and the Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. MEC has not licensed or authorized Defendants to use its MONSTER ENERGY Trademarks or the Copyrighted Designs, and none of the Defendants are authorized retailers of genuine Monster Energy Products.

> **ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

Upon information and belief, Defendants also deceive unknowing consumers by using the MONSTER ENERGY Trademarks and/or the Copyrighted Designs without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Monster Energy Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Monster Energy Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, MEC also seeks to disable Defendant Domain Names owned by Defendants that are the means by which the Defendants could continue to sell Counterfeit Monster Energy Products.

> **ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

28. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Amended Schedule A to the Second Amended Complaint, as well as other unknown fictitious names and addresses. Such Defendant

Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

29.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.  For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names.  In addition, Counterfeit Monster Energy Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Monster Energy Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.  The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images, including content copied from MEC's monsterenergy.com website.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

22

30.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts.  For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit.  Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received.  Rogue servers are notorious for ignoring take down demands sent by brand owners.  Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.  A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

31.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of MEC's enforcement efforts.  Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.  Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters

regularly move funds from U.S.-based PayPal accounts to offshore bank accounts outside the jurisdiction of this Court.

> **ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

32.     Defendants, without any authorization or license from MEC, have knowingly and willfully used and continue to use the MONSTER ENERGY Trademarks and/or copies of the Copyrighted Designs in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Monster Energy Products into the United States and Illinois over the Internet.   Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Monster Energy Products into the United States, including Illinois.

> **ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

33.     Defendants' use of the MONSTER ENERGY Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Monster Energy Products, including the sale of Counterfeit Monster Energy Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming MEC.

> **ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

34.     MEC re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 33.

**ANSWER: Defendant re-alleges and incorporates by reference the responses set forth in paragraphs 1 through 33.**

35.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered MONSTER ENERGY Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.   The MONSTER ENERGY Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Monster Energy Products provided under the MONSTER ENERGY Trademarks.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them**

36.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products bearing counterfeit reproductions of the MONSTER ENERGY Trademarks without MEC's permission.

**ANSWER: Denied.**

25

37.     MEC is the exclusive owner of the MONSTER ENERGY Trademarks.  MEC's United States Registrations for the MONSTER ENERGY Trademarks (**Exhibit 1**) are in full force and effect.  Upon information and belief, Defendants have knowledge of MEC's rights in the MONSTER ENERGY Trademarks, and are willfully infringing and intentionally using counterfeits of the MONSTER ENERGY Trademarks.  Defendants' willful, intentional and unauthorized use of the MONSTER ENERGY Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

38.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

**ANSWER: Denied.**

39.     MEC has no adequate remedy at law, and if Defendants' actions are not enjoined, MEC will continue to suffer irreparable harm to its reputation and the goodwill of its well-known MONSTER ENERGY Trademarks.

**belief as to the truth of the allegations stated and, therefore, denies them.**

40.     The injuries and damages sustained by MEC have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Monster Energy Products.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

## COUNT II
### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

41.     MEC hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 40.

**ANSWER: Defendant re-alleges and incorporates by reference the responses set forth in paragraphs 1 through 40.**

42.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Monster Energy Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with MEC or the origin, sponsorship, or approval of Defendants' Counterfeit Monster Energy Products by MEC.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

43. By using the MONSTER ENERGY Trademarks on the Counterfeit Monster Energy Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Monster Energy Products.

**ANSWER: Denied.**

44. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Monster Energy Products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

**ANSWER: Denied.**

45. MEC has no adequate remedy at law and, if Defendants' actions are not enjoined, MEC will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

**COUNT III**
**CLAIM FOR INJUNCTIVE RELIEF UNDER THE ANTICYBERSQUATTING**
**CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)) AS TO THE DEFENDANTS**
**OPERATING A DEFENDANT DOMAIN NAME INCORPORATING THE**
**MONSTER ENERGY TRADEMARKS**

28

46.     MEC hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 45.

**ANSWER: Defendant re-alleges and incorporates by reference the responses set forth in paragraphs 1 through 45.**

47.     MEC is the exclusive owner of the MONSTER ENERGY Trademarks.  The U.S. trademark registrations for the MONSTER ENERGY Trademarks (**Exhibit 1**) are in full force and effect.  Additionally, the MONSTER ENERGY Trademarks are highly distinctive and famous marks pursuant to 15 U.S.C. § 1125 and were famous before and at the time of the registration of the Defendant Domain Names.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

48.     Upon information and belief, Defendants operating a Defendant Domain Name incorporating the MONSTER ENERGY Trademarks have acted with bad faith intent to profit from the unauthorized use of the MONSTER ENERGY Trademarks and the goodwill associated therewith by registering, trafficking in, or using various domain names which are identical to, confusingly similar to, or dilutive of the MONSTER ENERGY Trademarks.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

49.     Defendants have no intellectual property rights in or to the MONSTER ENERGY Trademarks.

**Answer: Admitted.**

50.     Defendants' actions constitute willful cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

**Answer: Denied.**

51.     MEC has no adequate remedy at law, and the registration and use of the Defendant Domain Names incorporating the MONSTER ENERGY Trademarks has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to MEC.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

## COUNT IV
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510, *et seq.*)

52.     MEC hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 51.

**ANSWER: Defendant re-alleges and incorporates by reference the responses set forth in paragraphs 1 through 51.**

53.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Monster Energy Products as those of MEC, causing a

likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Monster Energy Products, representing that their products have MEC's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

54.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

**ANSWER: Denied,**

55.     MEC has no adequate remedy at law, and Defendants' conduct has caused MEC to suffer damage to its reputation and goodwill.  Unless enjoined by the Court, MEC will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

## COUNT V
**COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATION NOS. VA 1-789-900 AND VA 1-789-991 (17 U.S.C. §§ 106 AND 501) AS TO CERTAIN DEFENDANTS**

56.     MEC hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 55.

**ANSWER: Defendant re-alleges and incorporates by reference the responses set forth in paragraphs 1 through 55.**

31

certain copyrightable subject matter under 17 U.S.C. §§ 101, *et seq*.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

58.    MEC has complied with the registration requirements of 17 U.S.C. § 411(a) for the Copyrighted Designs, and has obtained Copyright Registration Nos. VA 1-789-900, and VA 1789-991.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

59.    Certain Defendants[1]' deliberate copying of MEC's Copyrighted Designs infringes and continues to infringe MEC's Copyrighted Designs in violation of 17 U.S.C. § 501(a).  Certain

[1] The following twenty-five (25) Defendant Internet Stores are not alleged to have infringed the Copyrighted Designs: (1) Bela Kristen's store on line 388 of the Defendant Section of Amended Schedule A, associated with the URL aliexpress.com/store/519207 on line 220 of the Online Marketplace Accounts section of Amended Schedule A; (2) Fishing-king Tackle Co.,Ltd on lines 207 and 208 of the Defendant Section of Amended Schedule A, associated with the URL aliexpress.com/store/1018084 on lines 39 and 40 of the Online Marketplace Accounts section of Amended Schedule A; (3) Freelander Outdoor on line 326 of the Defendant Section of Amended Schedule A, associated with the URL aliexpress.com/store/1595006 on line 158 of the Online Marketplace Accounts section of Amended Schedule A; (4) goog shopping  on line 332 of the Defendant Section of Amended Schedule A, associated with the URL aliexpress.com/store/1666542 on line 164 of the Online Marketplace Accounts section of Amended Schedule A; (5) HK SHENGYIN Technology Co., Ltd. on line 433 of the Defendant Section of Amended Schedule A, associated with the URL aliexpress.com/store/812210 on line 265 of the Online Marketplace Accounts section of Amended Schedule A; (6) Hong Kong macro Lin co., LTD on line 365 of the Defendant Section of Amended Schedule A, associated with the URL aliexpress.com/store/317701?spm=0.0.0.0.ktA11S on line 197 265 of the Online Marketplace Accounts section of Amended Schedule A; (7) IDEALHERE E-COMMERCE TRADE LTD on line 450 of the Defendants section of Amended Schedule A, associated with the URL aliexpress.com/store/902820 on line 282 of the Online Marketplace Accounts

section of Amended Schedule A, associated with the URL aliexpress.com/store/713636 on line 248 of the Online Marketplace Accounts section of Amended Schedule A; (9) Knightcat's Store on line 220 of the Defendants section of Amended Schedule A, associated with the URL aliexpress.com/store/109472 on line 52 of the Online Marketplace Accounts section of Amended Schedule A; (10) Million Sports Mall on line 272 of the Defendants section of Amended Schedule A, associated with the URL aliexpress.com/store/1298333 on line 104 of the Online Marketplace Accounts section of Amended Schedule A; (11) Miss Lily Come On on line 420 of the Defendants section of Amended Schedule A, associated with the URL aliexpress.com/store/718346 on line 252 of the Online Marketplace Accounts section of Amended Schedule A; (12) Neon Factory Sales on line
243 of the Defendants section of Amended Schedule A, associated with the URL aliexpress.com/store/1202603 on line 75 of the Online Marketplace Accounts section of Amended Schedule A; (13) Pufeter business Co.,Ltd on line 401 of the Defendants section of Amended Schedule A, associated with the URL aliexpress.com/store/621783 on line 233 of the Online Marketplace Accounts section of Amended Schedule A; (14) Revolutionary Neon signs on line 285 of the Defendants section of Amended Schedule A, associated with the URL aliexpress.com/store/1363019 on line 117 of the Online Marketplace Accounts section of Amended Schedule A; (15) Saving Big Here on line 210 of the Defendants section of Amended Schedule A, associated with the URL aliexpress.com/store/1037068 on line 42 of the Online Defendants are directly infringing on MEC's exclusive right to reproduce copies, make derivative works, distribute copies, and display its Copyrighted Designs under 17 U.S.C. §§ 106(1)–(3), (5).

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

60.     Upon information and belief, certain Defendants' infringement has been willful and deliberate.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

61.     Certain Defendants, by their actions, have damaged MEC in an amount to be determined at trial.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

33

62. Certain Defendants, by their actions, have irreparably injured MEC. Such irreparable injury will continue unless certain Defendants are preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations stated and, therefore, denies them.**

Marketplace Accounts section of Amended Schedule A; (16) Sports Bar on line 442 of the Defendants section of Amended Schedule A, associated with the URL aliexpress.com/store/825083 on line 274 of the Online Marketplace Accounts section of Amended Schedule A; (17) Spring's International Wholesale mall on line 259 of the Defendants section of Amended Schedule A, associated with the URL aliexpress.com/store/1262166 on line 91 of the Online Marketplace Accounts section of Amended Schedule A; (18) SZ Elink Electronics Co., Ltd. on line 361 of the Defendants section of Amended Schedule A, associated with the URL aliexpress.com/store/315222 on line 193 of the Online Marketplace Accounts section of Amended Schedule A; (19) T-More Sport on line 300 of the Defendants section of Amended Schedule A, associated with the URL aliexpress.com/store/1454359 on line 132 of the Online Marketplace Accounts section of Amended Schedule A; (20) Motorcycle appearance shop on line 321 of the Defendants section of Amended Schedule A, associated with the URL aliexpress.com/store/1543453 on line 153 of the Online Marketplace Accounts section of Amended Schedule A; (21) Thinkmore Technology Co.,Ltd on line 364 of the Defendants section of Amended Schedule A, associated with the URL aliexpress.com/store/317471 on line 196 of the Online Marketplace Accounts section of Amended Schedule A; (22) totem store on line 262 of the Defendants section of Amended Schedule A, associated with the URL aliexpress.com/store/1269349 on line 94 of the Online Marketplace Accounts section of Amended Schedule A; (23) vove on line 260 of the Defendants section of Amended Schedule A, associated with the URL aliexpress.com/store/1263073 on line 92 of the Online Marketplace Accounts section of Amended Schedule A; (24) Yiwu Desong Hardware Jewelry Store on line 327 of the Defendants section of Amended Schedule A, associated with the URL aliexpress.com/store/15998 on line 159 of the Online Marketplace Accounts section of Amended Schedule A; and (25) Zhejiang Showlove Jewelry Co., Ltd on line 218 of the Defendants section of Amended Schedule A, associated with the URL aliexpress.com/store/1083555 on line 50 of the Online Marketplace Accounts section of Amended Schedule A.

Defendant denies all allegations in Paragraphs 1-10 of the prayer for relief,

including that Plaintiff is entitled to any of the relief requested.

Dated: October 14, 2015                    Respectfully submitted,

                                           /s/ Keith A. Vogt
                                           _____
                                           Keith A. Vogt
                                           1033 South Blvd
                                           Suite 200
                                           Oak Park, IL 60302
                                           Keith@Vogtip.com
                                           708.203.4787
                                           *Attorney for Defendant*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that service of the foregoing document was made on all counsel of record on October 14, 2015 *via* the court's CM/ECF system.


/s/ Keith A. Vogt
Keith A. Vogt