# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MONSTER ENERGY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 C 4166 |
| | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| CHEN WENSHENG, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff's motions for partial summary judgment against Wu Zou d/b/a Legend Trading Co. (111) and against Zhang Yuan d/b/a mqxxc (115) are granted. The defendants are hereby permanently restrained, enjoined and prohibited from advertising, offering for sale, and selling any good bearing a mark which is identical with, or substantially indistinguishable from, MONSTER ENERGY trademarks, registration nos. 4,051,650, 3,908,601, 3,963,668 or 3,908,600, which mark is likely to cause confusion, or to cause mistake or to deceive another person to believe the good originated, is sponsored by, or is approved by Monster Energy Company (MEC).

MEC is awarded statutory damages against (1) defendant Wu Zou in the amount of one million dollars ($1,000,000) for willful use of one MEC Trademark on products sold on its Internet store Legend Trading, and (2) defendant Zhang Yuan in the amount of one million dollars ($1,000,000) for willful use of one MEC Trademark on products sold on its Internet store mqxxc. All monies currently restrained in financial accounts connected to defendants or defendants' Online Marketplace Accounts, including monies held by PayPal, are hereby released to MEC as partial payment of the above-identified damages, and PayPal is ordered to release to MEC the amounts from defendants' PayPal accounts within ten (10) business days of receipt of this Order.

Plaintiff is allowed its costs and a reasonable attorney's fee. The parties shall proceed according to LR 54.3 in an effort to reach agreement on a reasonable fee. See Statement.

## STATEMENT

Before the court are two motions: plaintiff's motions for partial summary judgment and entry of statutory damages award against (1) defendant Wu Zou d/b/a the Internet Store Legend Trading Co., Ltd. (Legend Trading) (dkt. 111) and (2) defendant Zhang Yuan d/b/a Internet Store mqxxc (mqxxc) (dkt. 115). (Wu Zou and Zhang Yuan are referred to together as "defendants.")

**I.  Background**[1]

MEC) is the owner of numerous U.S. trademark registrations for its MONSTER ENERGY trademarks, including trademark numbers 4,051,650 and 3,908,601 (collectively the MEC Trademarks). (Dkt. 124 (Defendant Legend Trading's Local Rule 56.1 Statement of Facts (Legend Trading's L.R. 56.1)) at ¶ 1.) Defendant Legend Trading offered for sale gloves bearing counterfeits of MEC Trademarks for $8.99 per piece, with 8991 pieces available, through the online marketplace account identified as Legend Trading Co., Ltd at the URL aliexpress.com/store/1410240. (*Id.* at ¶ 2.) Defendant mqxxc offered for sale decals bearing counterfeits of MEC Trademarks for $39.99 per piece, with 999 pieces available, through the online marketplace account identified as mqxxc. (Dkt. 126 (Defendant mqxxc's Local Rule 56.1 Statement of Facts (mqxxc's L.R. 56.1)) at ¶ 2.) MEC has not authorized or licensed defendants to use any of MEC's Trademarks or to sell MEC products on their internet stores. (Legend Trading's L.R. 56.1 at ¶ 4; mqxxc's L.R. 56.1 at ¶ 4.)

MEC, through its investigation, examined the images on these online accounts and determined that the items were counterfeit. (Legend Trading's L.R. 56.1 at ¶ 2; mqxxc's L.R. 56.1 at ¶ 2.) On their Internet stores, defendants offered to ship the products bearing the counterfeit MEC Trademarks to the United States, including Illinois. (Legend Trading's L.R. 56.1 at ¶ 5; mqxxc's L.R. 56.1 at ¶ 5.) MEC's investigator initiated an order for these counterfeit products. (Legend Trading's L.R. 56.1 at ¶ 4; mqxxc's L.R. 56.1 at ¶ 4.)

As a result of defendants' conduct and the conduct of other Chinese entities that have offered counterfeit Monster Energy products for sale online, MEC filed suit alleging the following: willful trademark infringement and counterfeiting in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114 (count I); willful false designation of origin in violation of section 43 of the Lanham Act, 15 U.S.C. § 1125 (count II); willful cybersquatting in violation of section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d) (count III); willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510 *et seq.* (UDTPA) (count IV); and deliberate copying of MEC's copyrighted designs in violation of the Copyright Act, 17 U.S.C. § 501(a) (count V). (Dkt. 53 ¶¶ 34−62.) Following the filing of its complaint, MEC moved for and the court entered a temporary restraining order freezing defendants' PayPal accounts (dkt. 22), which the court later converted to a preliminary injunction (dkt. 33).

MEC moves for partial summary judgment on counts I, II, IV and a finding of willful conduct against defendants. (Dkts. 111, 115.) MEC also requests an award of statutory damages

---

[1] Unless otherwise noted, the facts in this section are taken from the parties' Local Rule 56.1 statements and are construed in the light most favorable to the non-moving party in each motion for summary judgment. The court will address many but not all of the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citation omitted). In accordance with its regular practice, the court has considered the parties' objections to the statements of fact and includes in this background only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion. Any facts that are not controverted as required by Local Rule 56.1 are deemed admitted.

of at least $100,000 against each defendant. For the reasons stated below, MEC's motions are granted.

## II.   Legal Standard

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare*, 629 F.3d at 704.

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24.

## III.   Analysis

MEC contends, and defendants do not dispute, that MEC is entitled to summary judgment against defendants on its claims of trademark infringement and counterfeiting, false designation of origin, and UDTPA. To prevail on all of these claims, MEC must establish that its marks are protectable and that the defendants' unauthorized use of the marks was likely to cause confusion among consumers. See *Monster Energy Co.* v. *Jing, et al.*, No. 15 C 227, 2015 WL 4081288, at * 3 (N.D. Ill. July 6, 2015). The court concludes MEC has established that there is no genuine issue of material fact that MEC's registered trademarks are entitled to protection,[2] and MEC has not authorized either defendant to use its marks. It is undisputed that Wu Zou d/b/a Legend Trading Company uses a mark that is essentially identical to MEC's registered trademark numbers 4,051,650 and 3,908,601 for clothing and apparel, and the mark is affixed to pro-biker gloves that Wu Zou offers for sale on the Internet within Illinois, such that a reasonably discriminating online consumer in Illinois is likely to be confused or deceived into believing that the advertised gloves originate with MEC. There is also no genuine issue of material fact that Zhang Yuan d/b/a mqxxc uses a mark that is essentially identical to MEC's registered trademarks 3,963,668 or 3,908,600 for stickers, decals, and posters and the mark is affixed to decals Zhan Yuang has offered for sale in Illinois, such that a reasonably discriminating online consumer in Illinois is likely to be confused or deceived into believing that

---

[2] The issuance of a federal registration on the Principal Register of the United States Patent and Trademark Office is prima facie evidence of the validity of the mark and the registrant's exclusive right to use the mark. 15 U.S.C.002§§ 115(a) and 1057(b).  Neither defendant has offered rebuttal evidence.

3

defendants' advertised product originates with MEC. Accordingly, MEC is entitled to summary judgment on counts I, II, and IV against Wu Zao and Zhang Yuan.

The only disputed issue is the appropriate award of statutory damages. Under the Lanham Act, in a case involving the use of a counterfeit mark, the plaintiff may elect to receive "not less than $1,000 or no more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). If, however, the counterfeiting is willful, the plaintiff can receive up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." *Id.* § 1117(c)(2). MEC asserts that defendants' infringement was knowing and willful, and it seeks to recover awards of statutory damages against them in the amount of at least $100,000. (Dkts. 112 at 14; 116 at 14.)

"Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co.* v. *S & M Cent. Serv. Corp.*, No. 03-cv-4986, 2004 WL 2534378, at *7 (N.D. Ill. Nov. 8, 2004). Knowledge can be inferred from a defendant's conduct. *Id.* Less than a year ago, in an indistinguishable trademark infringement and counterfeiting case, Judge Alonso concluded that the "defendants willfully infringed Monster's Marks," because "[p]roducts bearing Monster's Marks are widely recognized and associated exclusively with Monster, and the marks defendants used are virtually identical to Monster's." *Jing*, 2015 WL 4081288, at * 3. The court is not persuaded otherwise by defendants' unsubstantiated assertions that these "are the actions of an un-informed Chinese citizen that made a mistake." (Dkts. 123 at 2, 125 at 1.) *See Bulgari, S.P.A.* v. *Zou Xiaohong, et al.*, No. 15 C 5148, 2015 WL 6083202, at *2 (N.D. Ill. Oct. 15, 2015) (rejecting as unsubstantiated the defendant's argument that the infringement was not willful because, "growing up in a remote farmland, the defendant] was not familiar with European luxury products or brand names, including BVLGARI" was unsubstantiated).

In determining the amount of statutory damages to award, the court is "not required to follow any rigid formula." *Chi-Boy Music* v. *Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Indeed, the court "enjoys wide discretion." *Id.* In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id.* Additionally, courts in this circuit have considered "the value of the plaintiff's brand 'and the efforts taken to protect, promote and enhance that brand.'" *Jing*, 2015 WL 4081288, at * 4 (quoting *Lorillard*, 2004 WL 2534378, at *6).

Again, the court finds compelling Judge Alonso's reasoning in *Jung* that "these factors favor a large statutory damages award." *See id.* There, MEC sought $2 million in statutory damages against each defendant. *Id.* The court awarded $1 million explaining that these defendants, unlike the other defendants' against whom the court had awarded $2 million, were not in default and had only modest assets seized as a result of the suit. *Id.* The situation is nearly identical here and, for the reasons articulated in *Jinn*, the court awards MEC statutory damages in the amount of $1,000,000 against Wu Zou and $1,000,000 against Zhang Yuan.

MEC also seeks the entry of a permanent injunction enjoining defendants from advertising, offering for sale, and selling counterfeit MEC products or otherwise violating its

4

rights in the MEC Trademarks and transferring all assets in financial accounts operated by PayPal, Inc., and linked to defendants, as well as any newly discovered assets, to MEC. "The Court has the power to enter such an injunction 'according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of' a trademark." *Id.* (quoting 15 U.S.C. § 1116(aGiven that the conduct was willful and defendants' do not dispute that an injunction may be entered, the court grants the request for a permanent injunction.

Lastly, MEC seeks an award of attorney's fees and costs. As the prevailing party, MEC is entitled to costs. Fed. R. Civ. P. 54(d)(1). Additionally, under 15 U.S.C. § 1117(b), because the conduct here was the intentional use of a counterfeit mark and there are no extenuating circumstances, MEC is entitled to reasonable attorneys' fees. *See Jing*, 2015 WL 4081288, at * 4.

Date: June 30, 2016

_____
U.S. District Judge Joan H. Lefkow